RENA COOPER, RESPONDENT, v. WINNWOOD AMUSEMENT COMPANY, APPELLANT.—55 S. W. (2d) 737.

Kansas City Court of Appeals.   November 21, 1932.

*Harry G. Kyle* and *Walter A. Raymond* for respondent.

*James S. Simrall, Paul C. Sprinkle* and *Ingraham D. Hook* for appellant.

ARNOLD, J.—This is an action in damages for personal injury. Plaintiff is married and resides in Kansas City, Missouri; defendant is a corporation and, at the time of the accident complained of, was engaged in operating for profit a public amusement park in Clay County, Missouri, known as Winnwood or Winnwood Beach. As one of the attractions at the park, there was operated a concession called "Whirl Winn"—a device commonly called a roller coaster. The device consisted of steel rails, over which were operated trains, each having three cars, each car having three seats and each seat designed to carry two passengers. The track was constructed in a series of waves, consisting of high peaks followed by deep depressions. The first peak was approximately 69 to 76 feet high, the

next 65 feet high, and each succeeding peak was correspondingly lower than the preceding one. Between these peaks, the track sloped steeply down, almost to the ground, and then up again to the top of the next peak. The slope down from the first peak was a descent of 48 degrees and that of the second (the one here involved) was 49 degrees, a drop of 64 feet in a run of 110½ feet. The cars had wheels which were without flanges, as were the rails. The cars had underslung wheels running on the rails from beneath, the purpose being to keep the cars on the track and prevent too much wobbling.

The trains were pulled to the top of the first peak by means of a chain operated by power, then released, and from there on, were operated by gravity. After being released from the chain, the trains gathered speed and momentum as they proceeded. There was no control device by which they could be stopped or controlled until the end of the journey, when they were stopped to change passengers.

The testimony in plaintiff's behalf showed that, as the cars descended the inclines, by reason of the steepness and the great speed attained by the cars, passengers were raised out of their seats and remained so suspended until the cars reached the lowest point of the descent and suddenly started up the next incline. This brought the bodies of passengers into contact with the seats at a time when their bodies were traveling downward. Plaintiff's testimony shows the cars traveled at great speed and pitched and tossed.

The public was invited to the park and to ride on the "Whirl Winn," a charge of 15 cents being made for the first ride and 10 cents for subsequent rides. Special rates were made for picnic parties and for special groups. On June 15, 1930, plaintiff, in company with others, visited said park to attend a picnic known as the "Gypsy Tourist picnic." At about 3:30 P. M. plaintiff, in company with her daughter and two young men, paid the required admission fee, and plaintiff and one of the young men seated themselves in the rear seat of the rear car of the train on the "Whirl Winn." Plaintiff never had ridden this coaster before and she testified she did not know about the steep dips; that when she got into the car she said to the attendant, "there is no strap" and the attendant said "you don't need any strap;" and said nothing in the way of warning. However, he did say he would take her camera which she was holding in her hand. Plaintiff's testimony shows the cars were constructed of plain boards, without pads or cushions on the seats or backs; that there were no straps to serve as safety devices to hold passengers in their seats, or to which they might hold for safety; there were no cleats, guards or stirrups for the feet, and no means of bracing or holding the feet; that the only device of any nature to aid passengers in remaining in their seats and bracing themselves against jolts and jars, was a steel rod across the back of

each seat immediately in front of the passengers; that this rod projected back about three inches from the preceding seat, approximately on a level with the knees, and so far in advance of the seat that the ordinary sized passenger could reach it only by extending his arms full length.

The testimony in defendant's behalf in regard to the construction of the car was to the effect that the cars were of the latest type of construction, had cushions seven inches thick, supported by springs on both seat and back, and that the steel rod extended back from the seat some nine to twelve inches; that straps were not used in the operation of the latest improved roller coaster cars, and that the cars used on June 15, 1930, were of that type. However, this conflict in testimony was a matter for the jury and we need not give it further consideration.

Plaintiff testified that, as the train started, she took firm hold of the rod on the back of the seat in front of her, with both hands and held on with all her force until the accident; as the car passed over the crest of the second peak, it seemed to be going straight down, by reason of its fast speed; plaintiff's body was raised off the seat 12 to 18 inches, her feet were raised off the floor—as there was nothing whereby she could hook her feet and brace herself; as the car reached the lowest part of the decline and started upward, her body was still in the air; that her body in descending and the car ascending came into violent contact; that she was bent a little forward, and in the contact her buttocks came squarely down on the hard seat with great force; that she cried out from pain in the region of her lumbar vertebrae, and begged that the car be stopped; but there was no way to stop the car until the end of the journey, and when the end was reached, plaintiff was removed from the car, placed on a cot in defendant's office, and two of defendant's doctors were called. The doctors taped her back in the lumbar region and gave her a sedative.

The doctors, testifying for defendant, corroborated plaintiff in this, and further stated she complained of great pain in her back and lumbar region. They further testified there were marks on plaintiff's back and one shoulder where she had recently been taped, and there was a tape on one of her wrists. Plaintiff denied there was a tape on either of her wrists, and explained she had recently been taped for pleurisy and that the marks therefrom were on her shoulder and chest. The doctors testified that they placed no tape on her wrist, but plaintiff testified that they did so at the time. Again, we pause to remark these discrepancies were for the jury.

The testimony shows plaintiff remained on the cot in the office of defendant at the park until nine o'clock at night, when she was taken in an ambulance to Bell Memorial Hospital at Rosedale, Kansas, where she remained until June 24th. The X-ray taken at the

hospital revealed a compressed fracture of the first lumbar vertebrae. At the hospital, her body was put in a plaster cast. When she left the hospital, she was taken to her home, where she was confined to her bed until the latter part of June. On the advice of her physician, thereafter she wore a steel brace, which she was still wearing at the time of the trial, June, 1931. Plaintiff's testimony also was that an X-ray, taken nine months after the injury complained of, showed the first lumbar vertebrae was still narrower than its adjacent fellows. Plaintiff's doctor stated this condition was permanent, producing nervousness. The testimony of plaintiff showed that prior to the injury in suit, her back and spine were normal and she was in good health. In respect to plaintiff's lumbar vertebrae, defendant introduced testimony showing she had six lumbar vertebrae, whereas in normal persons, there are but five, and that this accounted for the depressed appearance of one of the six. Again, there was presented a question for the jury.

Defendant's evidence, by way of photographs, not filed of record, showed the car in which plaintiff is alleged to have been injured, was of standard make, having the latest and usual protection for passengers, and that it was of the construction usually employed in such concessions. Defendant introduced an expert witness, one McGinnis, who testified that another method of protection in common use at the time of plaintiff's injury was a strap fastened to the sides of the car and extending over the laps of passengers. These straps are for the passenger to hold onto, as well as for safety in holding him in his seat; that the attendant does not ask the passenger about it, but simply snaps the strap fastening him in; that a similar coaster at Fairmount Park in Kansas City used such straps.

The petition alleges the formal matters relative to the parties, the construction and operation of the concession involved, the date and manner of the alleged accident on June 15, 1930, and that plaintiff had never ridden on said concession before and had no knowledge or notice of the unusually steep and dangerous condition thereof. The petition sets out in detail the injuries claimed by plaintiff and that such injuries are progressive and permanent; that prior to receiving said injuries, plaintiff was a strong, able-bodied woman, and that the said injuries were directly caused by the negligence of defendant, as follows:

"That it negligently failed to warn plaintiff of the unusually steep descent on the far side of said second loops, and of the danger thereof.

"That it negligently constructed and maintained the second loop of said track in such condition that the first or descending side of said loop was almost perpendicular, causing said car to drop suddenly from beneath the passengers and changed its course to an

upward movement at the base of said loop, causing passengers thereon to strike the seat and floor of said car with great force and violence.

That it negligently failed to furnish straps or other devices to enable passengers to maintain their positions in the seat of said car while said car was descending said loop.

That it negligently failed to construct and maintain said track and said car in such condition that said car would descend gradually enough on the far side of said second loop that passengers would not be jerked from their seats and caused to strike said seat again with great force and violence when said car reached the base of said loop."

Judgment was sought in the sum of $15,000.

The amended answer was, first, a general denial, and, as affirmative defense, pleaded contributory negligence in that plaintiff rode the coaster with her shoulder and back bandaged and by reason thereof, she was unable to hold the handles; that plaintiff knew, or by the exercise of ordinary care on her part, should have known she would be unable to hold the handles with her wrist, shoulder and back in said injured condition, but she so negligently rode the coaster, and as a direct result thereof, she was injured.

The reply was a general denial. The trial was to the court and jury, resulting in a verdict and judgment for plaintiff in the sum of $3,000. Motions for a new trial and in arrest were overruled, and the cause is before us for review on appeal.

At the close of plaintiff's evidence and again at the close of all the evidence, defendant asked, and the court refused, instructions in the nature of demurrers in its behalf. Four assignments of error are presented: (1) The court erred in refusing to sustain defendant's demurrer to plaintiff's evidence; (2) in refusing to sustain the demurrer at the close of all the evidence; (3) in giving plaintiff's instruction No. 1; (4) in giving plaintiff's instruction No. 2.

In considering the first charge of error, we need only state. the record shows defendant did not stand on its demurrer to plaintiff's evidence, and therefore defendant is not in position to urge this assignment. The rule, in such situation, is that the point is waived and the only question presented for review in this connection is the overruling of the demurrer at the close of all the evidence. As to this, the rule is that plaintiff's evidence must be accepted as true and he is entitled to all reasonable inferences to be drawn from defendant's evidence in his favor. [Stauffer v. Ry. Co., 243 Mo. 305, 147 S. W. 1032; Neal v. Caldwell (Mo.), 32 S. W. (2d) 104; Clark v. A. & E. Bridge Co., 24 S. W. (2d) 143; Goucan v. Atlas P. Cement Co., 317 Mo. 919, 298 S. W. 789; Morris v. Atlas P. Cement Co. (Mo.), 19 S. W. (2d) 865, 872; Cech v. Chemical Co. (Mo.), 20 S. W. (2d) 509, 511.]

In support of the second assignment of error, defendant insists there was no testimony introduced on behalf of defendant which was helpful to plaintiff; that experts testified in behalf of defendant as to the manner in which the ride and cars were constructed, and other witnesses informed the jury the seats and backs of the cars were cushioned; that persons at the ride, both before and after the injury, testified the cars were operated at that time without trouble or complaint of any kind. It is argued there was nothing in the testimony introduced by either party which indicated to the jury that defendant owed plaintiff any duty to furnish straps or to warn; and there was no testimony from which the jury might infer that there was any connection between this alleged negligence and plaintiff's alleged injury, and therefore the court was in error in refusing to sustain defendant's demurrer at the close of all the evidence.

Without again going into the evidence of record touching this charge of error, it is well to look somewhat forward and examine plaintiff's instruction No. 1, given by the court, covering the entire case and directing a verdict. In that instruction, the issues of defendant's negligence in failing to warn and negligent construction of the concession and failure to furnish straps or other devices for safety were mentioned and therein submitted to the jury. If, therefore, there is any substantial evidence in the record to sustain any of the said issues of negligence, the demurrer was properly overruled. That there was such evidence is clearly shown in the statement of facts set forth herein. [Webster v. International Shoe Co., 18 S. W. (2d) 131, 133; Nixon v. Hill (Mo. App.), 52 S. W. (2d) 208, 211.]

In its brief, defendant states there were four charges of negligence alleged in the petition. The record shows these were covered by the evidence in plaintiff's behalf and submitted to the jury in plaintiff's instruction No. 1. At the close of the evidence defendant offered only a general demurrer, and upon the same being overruled, asked, and the court gave instructions numbered 6 and 8, submitting the issues of negligence to the jury. Thus, by joining in the submission of such issues, defendant is estopped to complain there was no evidence to sustain such issues. The rule is well settled in this state that if a petition alleges several grounds of negligence as the cause of the injury for which recovery is sought, and at the close of all the evidence the defendant asks an instruction in the nature of a general demurrer, which is overruled, and thereafter asks no instructions withdrawing the several allegations of negligence from the consideration of the jury, but joins with plaintiff in submitting one or more of the alleged grounds of negligence, the defendant is estopped to claim, on motion for a new trial or on appeal, that there was no evidence upon which the jury might have found for

plaintiff upon the issues so submitted. [Kirkpatrick v. Am. Creosoting Co. (Mo. App.), 37 S. W. (2d) 996, 1000, and cases therein cited; Detmering v. Ry. Co. (Mo. App.), 36 S. W. (2d) 112, 116; Corbin v. Ry. Co., 41 S. W. (2d) 832.] In the case last cited, this court said:

"It is claimed that there is no evidence tending to show any negligence upon the part of defendant relative to the alleged defective crossing or excessive speed. Having decided that there was evidence upon which plaintiff was entitled to go to the jury upon the question of failure to give a reasonably sufficient warning, it is unnecessary to pass upon these contentions. However, we may state that in view of the fact that the demurrer to the evidence was general and defendant offered no instruction withdrawing from the jury the question of defective crossing or excessive speed but joined with plaintiff in submitting these issues to the jury, it is now estopped to deny there is evidence tending to show negligence on its part in reference to the matter of a defective crossing and excessive speed, even if there were not, in fact, sufficient evidence of negligence in those respects. [Jones v. Hill (Mo. Sup.), 18 S. W. (2d) 382, 387; Kirkpatrick v. Am. Creosoting Co., 37 S. W. (2d) 996, decided by this court."]

Defendant's instructions 6 and 8, above mentioned (not set out in this opinion), squarely submit to the jury the question of negligence charged in the petition.

Testimony in plaintiff's behalf showed there were no safety appliances on the car except the steel rod across the seat in front of the passenger, and to utilize the rod for safety, the passenger had to lean forward to grasp it. While defendant's evidence was to the effect that such device was the one used on like cars in current use and of similar construction, yet defendant's expert witness, McGinnis, stated another method of protection in common use at the time of plaintiff's injury, was a strap fastened to the sides of the car and extending over the laps of passengers, just in front of their bodies; that similar safety straps were used on such concessions in Fairmount and Fairyland parks in Kansas City, Missouri. The contention that there was nothing in the testimony of defendant to aid plaintiff therefore is not tenable. We rule this point against defendant.

It is further urged the court erred in giving plaintiff's instruction No. 1. What we have said in the discussion of point 2, in respect to the demurrer at the close of all the evidence, applies with equal force to this charge. The instruction is lengthy and it is not necessary to set it out here. A careful examination of the instruction shows it conforms to the pleadings and evidence. There was substantial evidence that by reason of the construction, maintenance

and operation of the device, the ride was dangerous, and that defendant did not take proper and customary precautions to minimize such danger, all of which we have sufficiently referred to in the statement of facts.

Defendant further complains the instruction in question is erroneous because it broadens the issues by submitting the charge of defendant's negligent failure "to furnish straps or other devices reasonably sufficient." In its brief, defendant states:

"Certainly, it cannot be claimed by the respondent that there was any testimony upon which the jury could find that the appellant negligently failed to furnish other devices reasonably sufficient."

Thus, since defendant concedes there was no evidence of other devices, the jury could not have been misled by such portion of the instruction, and in that respect the instruction is without reversible error. This situation is met in Brice v. Payne (Mo. App.), 263 S. W. 1005, and the rule therein stated is as follows:

"The proof as to defendant's negligence did not go beyond the specific acts of negligence pleaded in the petition. We must assume, therefore, that the jury, having no other negligent act of the defendant before it, considered only the evidence adduced, and based their verdict on a finding that the defendant was guilty of the specific acts of negligence pleaded."

The Supreme Court, in Morris v. U. D. Bridge, etc., Co., 8 S. W. (2d) 11, 14, states the rule, as follows:

"Even if the instruction had been too general under the pleadings, it does not follow that the case should be reversed for this reason, for the proof covered only the specific matters complained of in the petition, and 'the jury had before it no other negligent act to consider.' [Riley v. Independence, 258 Mo. l. c. 683, 167 S. W. 1022; Ann. Cases, 1915D, 748.]" [See also State ex rel. v. First National Bank, 22 S. W. (2d) 185, 193; Jablonowski v. Modern Cap Mfg. Co., 312 Mo. 173, 279 S. W. 89.]

We deem it unnecessary to pursue this question further and hold against defendant's position that there was error in giving plaintiff's instruction No. 1.

Finally, error is charged against plaintiff's instruction No. 2, in that it requires defendant to exercise the highest degree of care. This instruction reads:

"By 'negligence' and 'negligently' as used in these instructions is meant the failure to use the highest degree of care. By 'highest degree of care' as used in these instructions means such care as a very careful and prudent person would use under the same or similar circumstances."

Defendant cites the case of Berberet v. Electric Park, etc., Co., 319 Mo. 275, 3 S. W. (2d) 1025, 1029, wherein the court says:

"The rule in this State, and generally, is that the proprietor of a place of public amusement owes to his patrons that duty which, under the particular circumstances, is ordinary care or reasonable care for their safety. (Citing cases.)"

Defendant also cites the case of Pointer v. Mt. Ry. Const. Co., 269 Mo. 104, 189 S. W. 805. This court said in Brown v. Amusement Co., 34 S. W. (2d) 149, 152:

"There have been several cases before the higher courts of this country involving devices similar to the one in the case at bar, and, while the courts have been slow in holding that the operator of such devices is technically a common carrier and that all of the rules governing such carriers are applicable to him, they do hold that the rule in reference to the degree of care required of a common carrier applies to the operation of such devices; that the apparatus is under the control and management of the operator thereof and where the accident is such as does not happen under the ordinary course of things, if those who have the management of the apparatus use proper care, reasonable evidence is afforded, in the absence of explanation by the defendant, that the accident arose from want of such care."

In our opinion we distinguished between the facts of the Brown case and those of the Pointer case, pointing out that in the latter case, the decision was by a divided court, and nothing therein was established except (1) that specific acts of negligence were pleaded, therefore the rule of *res ipsa loquitur* did not apply, and (2) the proof failed to show any unusual occurrence. There was therefore no conflict in the rulings in the Brown and Pointer cases. The other cases cited by defendant on this point do not apply here. The general rule is laid down in 10 Corpus Juris 609, Section 1035, as follows:

"The owner and operator of a scenic railway in an amusement park is subject, where he has accepted passengers on such railway for hire, to the liabilities of a carrier of passengers generally."

We hold to our ruling in the Brown case, supra, that the operators of such devices as the "Whirl Winn" are required to use the highest degree of care for the safety of their passengers. [See Sand Springs Park v. Schrader, 82 Okla. 244, 198 Pac. 983.] We rule this point against defendant, and hold the giving of plaintiff's instruction No. 2, was not error.

Defendant further contends plaintiff abandoned the first and fourth charges of negligence in her petition, to-wit, dangerous construction and maintenance. But the record does not support this contention, because, in plaintiff's instruction No. 1, the jury was required to find:

". . . that said concession consisted of a track in which there was a series of loops over which defendant operated small cars at high speed, if so, and that the second loop from the starting point of said track was very steep, if so, . . . that plaintiff . . . had no

knowledge or notice of the steep condition of said loop and the danger therefrom, if you find there was danger therefrom, if so, and that the defendant negligently failed to warn plaintiff of the steep descent on the far side of said second loop, and the danger therefrom, if you find there was such danger, unless proper precautions were taken, if so."

It is clear from this language, that charges of negligence, numbered one and four, were not abandoned. Finding no error of record, the judgment is affirmed. All concur.