UNITED STATES FIDELITY AND
GUARANTY COMPANY,
Appellant,

v.

Donald R. BRIAN, Tutor of, and for the
Use and Benefit of his Minor Child,
Nancy Brian, et al., Appellees.

No. 21169.

United States Court of Appeals
Fifth Circuit.

Oct. 16, 1964.

Breard Snellings, New Orleans, La.,
for appellant.

Deutsch, Kerrigan & Stiles, Ralph L. Kaskell, Jr., and John F. Tooley, Jr., New Orleans, La., for Allan Herschell Co., Inc. and Utica Mut. Ins. Co.

William H. McClendon, Jr., and McClendon & McClendon, New Orleans, La., Joe Spurlock, Fort Worth, Tex., for D. R. Brian.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and McRAE, District Judge.

WISDOM, Circuit Judge.

■ Multi-party lawsuits, with complicated questions involving indemnification and contribution, justify the submission of special interrogatories to a jury in place of a request for a general verdict. In this case, unfortunately, the special interrogatories resulted in inconsistent verdicts betraying a failure or refusal of the jury to understand all of the issues. Because of a basic inconsistency in the jury's special verdicts, we reverse the entire complex imbroglio for a new trial.

The Whizzer is an amusement ride at Pontchartrain Beach in New Orleans. It is owned and operated by Playland Amusement, Inc. May 4, 1961, Nancy Brian, age fifteen, was riding on the Whizzer. By wedging her foot into a small open space in the floor under her seat she managed to entrap it where it was injured by the carriage while she was "Whizzing".

Under the aegis of the Louisiana Direct Action Statute, LSA–R.S. 22:655 (now, happily, interred, so far as federal jurisdiction is concerned) Donald Brian, Nancy's father, brought this diversity action on her behalf claiming liability for negligence against the United States Fidelity and Guaranty Co., the public liability insurer of Playland. United States Fidelity and Guaranty Co. pleaded over, naming Allan Herschell Company, Inc., the designer and manufacturer of the Whizzer, and Utica Mutual Insurance Co., the insurer of Herschell, as third party defendants. United-ed States Fidelity and Guaranty Co. sought indemnification or, at least, contribution based on the negligence of the manufacturer or breach of warranty. The plaintiff then amended his complaint to include Herschell and Utica as original defendants.

Herschell designed the Whizzer and sold it to Playland in 1951. During ten years of using the Whizzer, Playland had complete control of the operation and maintenance of the ride. There were no changes made in the ride save the addition of headrests which were designed by Herschell and installed by Playland.

The Whizzer, as it was designed, as it was manufactured and delivered to Playland, and as it was operated on the day of the accident, contained floorboards in all of its cars. For the front seat in all cars the floorboard did not extend all the way underneath the seat. Rather, a small opening was left, into which a rider with a long leg and small foot might place his foot by stretching his leg underneath his seat. The opening was present on all Whizzer cars from the time of delivery until the time when the floorboards were extended after the accident. It was this opening into which young Nancy Brian placed her foot.

■ Liability for negligence in Louisiana is based on the standard of the reasonably prudent man in the given circumstances. In the case before us, there is no evidence of negligent maintenance; the Whizzer was in essentially the same condition on the day of the accident as it was when it was manufactured. Any negligence by the operator or manufacturer had to arise out of the faulty design and a subsequent unreasonable failure to warn or remedy. Nevertheless, the jury returned a special verdict of negligence in favor of the operator while holding the manufacturer blameless. In addition, the jury found that the manufacturer had not breached its warranty obligations under Article 2476 of the LSA–Civil Code [1] and that Nancy Brian was not guilty of contributory negligence.

---

[1]. Article 2476. Warranty against eviction and against latent defects

"Article 2476. The warranty respecting the seller has two objects; the first

The operator of an amusement park is not an insurer for all accidents that occur on the premises but he must use care commensurate with the dangers of the business. In Louisiana the operator of an amusement ride is not a common carrier and is not specifically held to the high standards of care reserved for such carriers.[2] Waguespack v. Playland Corp., La.App.1940, 195 So. 368. While he is held only to a standard of ordinary care, ordinary care must be defined in terms of the special circumstances and the special dangers arising from the operation of such a ride. Reasonable conduct must be defined in light of the knowledge that amusement rides have inherent dangers owing to speed or mechanical complexities. They are operated for profit and are held out to the public to be safe. They are operated in the expectation that thousands of patrons, many of them children, will occupy their seats. Indeed the distinction between those who are common carriers and those who are not may be largely illusory since the special duty of care laid to common carriers may be nothing more than a recognition of the special circumstances surrounding the operation of a carrier that makes its facilities available for hire. See 2 Harper & James, The Law of Torts § 16.14 at 947 (1956). "What is required is merely the conduct of the reasonable man of ordinary prudence under the circumstances, and the greater danger, or the greater responsibility, is merely one of the circumstances, demanding a greater amount of care." Prosser on Torts § 33 at 147 (1955).

In any event, the same circumstances that require greater care on the part of the amusement park operator apply as well to the manufacturer-designer of the amusement park rides. The dangers and their foreseeability are the same; both are creating risks to thousands of passengers for monetary gain.

If the fault for the accident in the case before us arises from the design of the Whizzer, such fault must surely fall upon the manufacturer-designer as well as on the operator. It is the latter who is the expert in matters of design; it is he who has initiated the faulty design. Nor can the manufacturer be held less responsible for recognizing a defect in the design. There was no question of not knowing about the small space behind the floorboard. The manufacturer must have known, since he designed and built the ride in this manner. Similarly, the operator must have known, because ten years of operation and maintenance must have familiarized him with every detail of the mechanism. The relevant consideration is not actual knowledge of the space under the seat but rather the knowledge or recognition that the space was dangerous, the foreseeability of injury arising from the existence of that space. Here too the manufacturer was in at least as good a position to foresee injury as was the operator. Both knew that thousands of passengers of all sizes, shapes, and inclinations would use the ride; if the injury to Nancy Brian was reasonably foreseeable, it was foreseeable to both.

Given the state of the facts and proofs we are forced to conclude that the special verdicts of negligence in favor of the operator and freedom from negligence for the manufacturer-designer are either inconsistent or unsupported by the evidence.[3] Inconsistent special verdicts

is the buyer's peaceable possession of the thing sold, and the second is the hidden defects of the thing sold or its redhibitory vices."

2. The district judge, in his lengthy instruction, mistakenly characterized the operator of an amusement ride as a common carrier. It is perhaps the misimpression of a higher duty of care which brought about the jury's inconsistent verdicts.

3. It would be possible to render the verdicts consistent by inferring that the jury found the operator negligent in the maintenance of the ride. The total lack of evidence to support such a finding would doom the verdict just as surely as would any inconsistency. In addition, it is impossible for us to interpret the special verdicts as representing a judgment that the negligence of the operator was an intervening cause which cut the chain of causation started by the

884

cannot stand; if one verdict is not demonstrably in error, there must be a new trial. We cannot convince ourselves that the misimpression that led the jury to this error did not taint its other judgments as well. In the interest of justice, we reverse the judgment and remand for a new trial of all the issues.

manufacturer's misdeeds. The district judge put the questions of negligence and proximate causation separately and the jury decided that the manufacturer was free from negligence.