Argued October 12, affirmed December 14, 1972

ELIASON (JONES), *Appellant, v.*
UNITED AMUSEMENT COMPANY, *Respondent.*
504 P2d 94

*Phil H. Ringle, Jr.,* Gladstone, argued the cause for appellant. With him on the briefs were Ringle & Herndon, Gladstone.

*William L. Hallmark,* Portland, argued the cause for respondent. With him on the brief were McMenamin, Jones, Joseph & Lang, Portland.

HOLMAN, J.

Plaintiff brought this action for damages resulting from injuries incurred when she fell upon a merry-go-round at defendant's amusement park. She appealed from a judgment for defendant entered pursuant to a jury verdict.

Plaintiff took a small child for a ride on the merry-go-round which had two levels or tiers of animals upon which to ride. The outer tier was on a platform about a foot lower than the inner tier. Plaintiff and the child rode upon the animals on the upper platform and, upon leaving the merry-go-round at the completion of their ride, plaintiff fell and injured herself. She claims that her foot slipped when she stepped on a bottle cap which was on the floor of the upper platform and that she fell from the upper platform to the lower one and suffered the injuries of which she complains.

■ Plaintiff first contends the court erred in not instructing the jury that defendant was required to use the highest degree of care for her safety, as required by ORS 460.355(2), while she was a patron on the amusement device. Insofar as applicable to plaintiff's contention, the statutory law is as follows:

"460 310 Definitions for ORS 460.310 to 460.380. As used in ORS 460.310 to 460.380, unless the context requires otherwise:

"(1) 'Amusement ride' means any vehicle, boat or other mechanical device moving upon or within a structure, along cables or rails, through the air by centrifugal force or otherwise, or across water,

that is used to convey one or more individuals for amusement, entertainment, diversion or recreation. 'Amusement ride' includes, by way of illustration:

"(a) Devices commonly known as Ferris wheels, carousels, parachute towers, tunnels of love and roller coasters.

"(b) Devices and equipment generally associated with winter sports activities, such as ski lifts, ski tows, j-bars, t-bars, ski mobiles, chair lifts and aerial tramways.

"* * * * * *"

"460.355 Rules; required standards of care; exemption of regulated or inspected devices. (1) In adopting rules pursuant to subsection (1) of ORS 460.360, applicable to devices mentioned in paragraph (b) of subsection (1) of ORS 460.310, the department shall be guided by the safety standards approved by the American Standards Association.

"(2) The owner or operator of such devices shall be deemed not a common carrier; however, such owner or operator shall exercise the highest degree of care for the safety of persons using the devices compatible with the practical operation of the devices being used.

"* * * * * *"

It is clear from the statutes just quoted that the requirement that the highest degree of care be used for patrons is limited to winter sport amusement devices as enumerated in ORS 460.310 (1) (b) and that carousels are not among the devices there enumerated.

■ Next, plaintiff contends the court erred in giving its instruction on causation because it confused causation with ultimate legal liability. The instruction was as follows:

"The term 'proximate cause' means a cause which, in a direct, unbroken sequence, produces the damages or the injuries complained of. An

injury is proximately caused by an act or failure to act whenever it appears that the injury was either a natural or reasonably probable consequence of such negligent act or failure to act."

Plaintiff is correct in her contention that the instruction intermingles the two concepts. An act may be the cause of damage even though the damage is not its natural or reasonably probable consequence. Whether or not damage is the natural or reasonably probable consequence of an act is a concept which concerns ultimate legal liability, and not causation.

We cannot say, however, that the error justifies reversal. We rather suspect that the concept is more confusing to members of the bench and bar who, presumably, are capable of such fine legal concepts, than it is to jurors. When the jury was told, as it was, that the negligent act must be "a cause which, in a direct, unbroken sequence, produces the damage or injuries complained of," we do not think it was seriously misled by the language which followed it which, admittedly, mixed causation with a correct concept relating to ultimate liability.

■ Plaintiff also contends that the trial court overemphasized contributory negligence in its instructions and that she was prejudiced thereby. Contributory negligence was mentioned many times, but it was usually, though not always, coupled with the corresponding mention of the possibility of negligence by defendant. It was thus mentioned in connection with the claims made by the pleadings, burden of proof, causation, and the duties of the parties. The instructions, as a whole, were somewhat repetitious. The trial judge recognized this and told the jury that "* * * some of these instructions may appear to be repetitious, but

don't put any more emphasis on them than you would on any others." In reading the instructions of the court, one does not receive the impression that the court is overemphasizing plaintiff's duties of care as compared with those of defendant.

■■ Plaintiff next objects to the giving of the first sentence of the following instruction:

> "The owner of premises—that is, the amusement company in this case—is not an insurer or guarantor against accidents to people who come onto the premises. The owner is bound to use ordinary care to keep the premises in a reasonably safe condition, and is not liable for injuries to people coming onto the premises unless there is proof that it was negligent in performing this duty, and that such negligence is the proximate cause of the injury * * *."

The portion of the instruction objected to is a correct statement of the law. It is merely a way of enlarging upon the instruction that defendant must be proved to have been guilty of a breach of duty owed to plaintiff which caused the accident before he can be held responsible. It is the kind of instruction which it is not error either to give or to fail to give.

■ Plaintiff's last assignment of error relates to a jury view which defendant asked for and which was allowed by the trial court. The accident occurred early in the evening; the jury view was taken in the afternoon. Defendant requested permission to turn on the merry-go-round lights, but plaintiff objected unless they would also be turned off during the jury view. The court required the lights to be left on the entire time the jury was there. After the jury view, plaintiff moved for a mistrial on the basis that the merry-go-round was "lit up like a Christmas tree"

with lights which were not present at the time of the accident. The court denied the mistrial and said:

"\* \* \* [I]f it turns out from the evidence here that the time she fell the lights that were on yesterday weren't on, I'm going to instruct the jury to disregard anything they saw about the lights yesterday."

Subsequently, as could be expected, there was a dispute concerning the adequacy of the lighting at the time of the accident and whether the lighting had been changed subsequent thereto. There is no indication that plaintiff requested the trial judge to fulfill his above-quoted intention to tell the jury to disregard the lighting which it saw during the jury view. The trial court did tell the jury during its instructions:

"Now, I told you the other day that you were going to the jury view, and that it was strictly to orient you with the evidence as it came in. You are instructed that the view is not evidence in this case as to any issue in the case, but is only to enable you to understand better the evidence as it was presented in the courtroom and to assist you in weighing what evidence that came to you here in the courtroom."

Plaintiff's objection seems to be not so much that the lights were not turned off at the time of the jury view, which was a matter for the discretion of the trial court, but, rather, that the existing lights had been repaired and new lights added subsequent to the accident. There is a dispute in the evidence concerning these matters, and there is no way this court can, at this time, resolve the factual disputes to any better advantage than the jury could have. All the testimony was before the jury, and if it found that lights had been repaired or added subsequent to the accident, such addition of light to the merry-go-round would

have been advantageous, rather than detrimental, to plaintiff. Under the circumstances, there is no way to determine the factual basis necessary for consideration of the mistrial.

The judgment of the trial court is affirmed.

DENECKE, J., specially concurring.

I specially concur only to emphasize that the instruction on "proximate cause" should not be given. The instruction given is taken almost verbatim from the Uniform Jury Instruction No. 15.01. This instruction is no longer correct for the reasons stated in the majority opinion and in the specially concurring opinion in *Stoneburner v. Greyhound Corp.*, 232 Or 567, 375 P2d 812 (1962).

"Proximate cause" is no longer an acceptable phrase. It intermingles the issue of physical causation with that of under what circumstances causally connected conduct imposes liability. The phrase is misleading to the jury because "cause," in its customary meaning, has no connection with the issue of when liability should be imposed for causally connected conduct.