**Doris Graf ELMER Appellant,**

v.

**SPEED BOAT LEASING, INC. and Paradise Gulf Cruises, Inc., Appellee.**

**No. 13–00–193–CV.**

Court of Appeals of Texas, Corpus Christi-Edinburg.

June 27, 2002.

Dissenting Opinion on Overruling of Rehearing En Banc Dec. 12, 2002.

Gilberto Hinojosa, Magallanes, Hinojosa & Mancias, Brownsville, for Appellant.

Carlos Villarreal, Barger, Hermansen, McKibben & Villarreal, Tom Hermansen, Barger, Hermansen, McKibben & Villarreal, L.l.p., Corpus Christi, for Appellee.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and CANTU [1].

**OPINION**

VALDEZ, Chief Justice.

Appellant, Doris Elmer, brought suit against appellees, Speed Boat Leasing, Inc. and Paradise Cruises, Inc., for personal injuries which she sustained while on a boat ride off the shore of South Padre Island, Texas. Appellant was awarded a take nothing judgment, which she appeals. We reverse the trial court's judgment and remand the cause for a new trial.

In 1996, appellees began operating a fifty-two foot speed boat out of South Padre Island, Texas. The vessel, named the Gulf Screamer, was advertised as a vessel that would provide an exciting, fun-packed cruise for all in the open waters near South Padre Island's beautiful beaches. Appellant, a seventy year old woman, was in her office working, when she was approached and offered a boat ride on the Gulf Screamer in exchange for allowing an advertisement for the boat to be placed in her office. Thereafter, appellant and her husband boarded the Gulf Screamer for a ride. It is undisputed that appellant was advised to hold onto her seat if the ride got rough, as there were no handles or seatbelts in the seat where appellant was seated. The ride did get rough and appellant states she was unable to hold onto her seat. As a result, appellant flew up out of her seat and then back down, which resulted in appellant fracturing her spine.

After hearing evidence, the trial court gave the jury the standard definition of "negligence" under Texas law, which defines it as the "failure to use ordinary care." Appellant argued that the jury should be instructed that appellees should be held to a higher degree of care. Appellant's requested instruction was denied. The jury returned a verdict which found that both appellant's and appellees' negligence proximately caused the occurrence in question. The verdict further attrib-

---

1. Retired Justice Antonio G. Cantu assigned to this Court by the Chief Justice of the Su-

preme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

uted thirty-five percent of the negligence to appellees and sixty-five percent to appellant. Based on this verdict, the trial court entered judgment which ordered that appellant take nothing from appellees.

Appellant presents three issues on appeal. Appellant first argues that the issue of her contributory negligence should not have been submitted to the jury because there was no evidence of same, as a matter of law. Second, appellant argues, in the alternative, that there was insufficient evidence to support the jury's finding of her contributory negligence. Last, appellant argues that the trial court erred in failing to instruct the jury that appellees were under a duty to exercise a higher degree of care with their passengers on the boat.

In her first issue, appellant complains that the issue of contributory negligence should not have been submitted to the jury, as there was no evidence of appellant's negligence. In her second issue, appellant complains that the evidence was factually insufficient to support the jury's finding of appellant's negligence.

▇ When reviewing a "no-evidence" issue, we must consider all of the evidence in the record in the light most favorable to the party in whose favor the verdict has been rendered, and we must apply every reasonable inference that could be made from the evidence in that party's favor. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). In this review, we disregard all evidence and inferences to the contrary. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995); *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990). We will sustain a no-evidence issue when: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence, offered to prove a vital fact; (3) the evidence offered to prove a

vital fact is no more than a mere scintilla of evidence; or (4) the evidence conclusively establishes the opposite of the vital fact. *Havner*, 953 S.W.2d at 711. More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.; Burroughs Wellcome Co.*, 907 S.W.2d at 499.

In reviewing a factual insufficiency issue, we consider and weigh all of the evidence and set aside the verdict only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

▇ After carefully reviewing the record, we find sufficient evidence to justify the submission of the issue of contributory negligence to the jury, and to support the jury's finding on this issue.

The evidence presented at trial revealed the following: appellant and her husband first positioned themselves in the boat, but then decided to move closer to the front of the boat, where the ride would be rougher; the captain of the boat gave the passengers a safety lecture, which included the information that the ride was rougher at the front of the boat; appellant had a history of osteoporosis and had taken medication which weakened her skeletal structure; appellant was instructed to hold on to her seat if the ride became rough, but appellant stated that she was unable to do so; and finally, there was nothing preventing appellant from holding onto her seat during the boat ride. Based upon the foregoing, we conclude there is more than a scintilla of evidence to support the jury's finding on this issue, and the evidence is not so weak such that the verdict is clearly wrong and unjust. *Havner*, 953 S.W.2d at

711; *Cain,* 709 S.W.2d at 176. Accordingly, there is both legally and factually sufficient evidence upon which the jury could have based their finding that appellant's negligence contributed to her injury.

Issues one and two are overruled.

We next address appellant's third issue, the question of whether the trial court charged the jury with the correct standard of care.

The trial court instructed the jury that "negligence" means failure to use ordinary care. The trial court further instructed the jury that "ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances. These instructions follow the suggested instructions in the Texas Pattern Jury Charges. COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES PJC 2.1 (2000). They include the standard and accepted elements of ordinary negligence. *Colvin v. Red Steel Co.,* 682 S.W.2d 243, 245 (Tex.1984); *Great Atl. & Pac. Tea Co. v. Evans,* 142 Tex. 1, 175 S.W.2d 249, 250–51 (1943).

■ Appellant requested, however, that the court instruct the jury that the appellees be held to a higher standard of care under the theory that appellees were common carriers, or alternatively, under the theory that appellees were operating a vessel at sea. However, appellant concedes, in her brief, that the application of substantive maritime law herein was waived.[2] Accordingly, we will examine whether appellees were common carriers, as that term as been defined by the courts of this state.

■ The term common carrier has been applied to those in the business of carrying passengers and goods who hold themselves out for hire by the public. *Mt. Pleasant Ind. Sch. Dist. v. Lindburg,* 766 S.W.2d 208, 213 (Tex.1989). It is undisputed that common carriers are held to a high degree of care. *Dallas Railway & Terminal v. Travis,* 125 Tex. 11, 78 S.W.2d 941, 942 (1935). A high degree of care is defined as that degree of care that would be exercised by a very cautious and prudent person under the same or similar circumstances. *Id.;* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES PJC 2.2 (2000).

■ Appellees respond that they should not be held to the same standard of care as common carriers because appellant did not pay for the ride. In support of this argument, appellees cite two cases, *Mt. Pleasant Ind. Sch. Dist. V. Estate of Lindburg,* 766 S.W.2d 208 (Tex.1989), and *Howell v. City Towing Assocs., Inc.,* 717 S.W.2d 729 (Tex.App.-San Antonio 1986, writ ref'd n.r.e.). The court in *Mt. Pleasant* held that school buses are not common carriers because they are not in the business of carriage *for hire. Mt. Pleasant Ind. Sch. Dist.,* 766 S.W.2d at 213. In *Howell,* the court held that a tow truck operator was not a common carrier because a wrecker service company does not operate a passenger service open to all the public. *Howell,* 717 S.W.2d at 733. While appellees correctly cite the holdings in *Mt. Pleasant* and *Howell,* appellees overlook the fact that they held themselves out for hire by the public. Further, appellees did receive consideration from appellant, inasmuch as appellant agreed to allow an advertisement to be placed in her office.

**2.** The application of substantive maritime law is a choice of law determination that can be

waived. *Gen. Chem. Corp. v. De La Lastra,* 852 S.W.2d 916, 920 (Tex.1993).

Appellees go on to argue that, because operators of thrill or amusement rides do not transport their passengers from place to place, they do not owe their passengers a high degree of care. Appellees offer a single unpublished opinion from the Court of Appeals for the First District of Texas, as authority for the proposition that amusement ride operators are not common carriers. However, said opinion has no precedential value, and counsel for appellees is prohibited from citing unpublished opinions as authority. TEX. R. APP. P. 47.7. Our own research reveals that, while no other Texas court has addressed the issue of whether amusement ride operators are common carriers, numerous other jurisdictions are split as to whether operators of amusement rides owe a high duty of care to their passengers.

Those jurisdictions which have held amusement park operators to a higher standard of care include: *Neubauer v. Disneyland, Inc.*, 875 F.Supp. 672 (C.D.Calif.1995) (holding that amusement park rides fall within definition of common carrier); *Lyons v. Wagers*, 55 Tenn.App. 667, 404 S.W.2d 270 (1966) (operator of amusement ride owes his patrons same degree of care owed by common carrier to its passengers, which is the highest degree of care); *Lewis v. Buckskin Joe's, Inc.*, 156 Colo. 46, 396 P.2d 933 (1964) (operator of amusement park's stage-coach ride held to highest duty of care); *Pajak v. Mamsch*, 338 Ill.App. 337, 87 N.E.2d 147 (1949) (court acknowledges that operator of ferris wheel held to highest degree of care, equivalent to that of common carrier); *Coaster Amusement Co. v. Smith*, 141 Fla. 845, 194 So. 336 (1940) (operator of roller coaster held to highest degree of care equivalent to that of common carrier); *Bibeau v. Fred W. Pearce Corp.*, 173 Minn. 331, 217 N.W. 374 (1928) (operator of roller coaster held to highest degree of care equivalent to that of common carrier);

*Cooper v. Winnwood Amusement Co.*, 227 Mo.App. 608, 55 S.W.2d 737 (1932) (operator of roller coaster held to the highest degree of care equivalent to that of common carrier); *Sand Springs Park v. Schrader*, 82 Okla. 244, 198 P. 983 (1921) (operator of scenic railway held to duty of highest care and caution).

Those jurisdictions which have held that amusement ride operators are not common carriers, and thus owe a duty of ordinary care to their passengers, include the following: *Bregel v. Busch Entm't Corp.*, 248 Va. 175, 444 S.E.2d 718 (1994) (gondola ride at amusement park held not common carrier); *Beavers v. Fed. Ins. Co.*, 113 N.C.App. 254, 437 S.E.2d 881 (1994) (white water rafting operator held not common carrier); *Lamb v. B & B Amusements Corp.*, 869 P.2d 926 (Utah 1993) (roller coaster operator not common carrier); *Harlan v. Six Flags Over Georgia, Inc.*, 250 Ga. 352, 297 S.E.2d 468 (1982) (amusement ride operator held to standard of ordinary care); *Eliason v. United Amusement Co.*, 264 Or. 114, 504 P.2d 94 (1972) (court held merry-go-round operator not subject to heightened standard of care); *U.S. Fidelity & Guaranty Co. v. Brian*, 337 F.2d 881 (5th Cir.1964) (under Louisiana law, operator of an amusement ride is not common carrier); *Firszt v. Capitol Park Realty Co.*, 98 Conn. 627, 120 A. 300 (1923) (operator of "aeroplane swing" not held to high decree of care required by common carriers); *Brennan v. Ocean View Amusement Co.*, 289 Mass. 587, 194 N.E. 911 (1935) (operator of roller coaster was not common carrier).

■ We endorse the rationale of those courts which have held amusement ride operators to a higher standard of care. While appellees have argued, and some courts have stated, that amusement ride operators are not common carriers be-

cause they do not offer transportation from one locale to another, we find that reasoning unpersuasive. *See Harlan v. Six Flags Over Georgia, Inc.*, 250 Ga. 352, 297 S.E.2d 468, 469 (1982) (distinguishing between instruments of transportation and amusement rides). Instead, we find persuasive the analysis of the Supreme Court of Colorado, which stated:

> It is not important whether defendants were serving as a carrier or engaged in activities for amusement. The important factors are, the plaintiffs had surrendered themselves to the care and custody of the defendants; they had given up their freedom of movement and actions; there was nothing they could do to cause or prevent the accident. Under the circumstances of this case, the defendants had exclusive possession and control of the facilities used in the conduct of their business and they should be held to the highest degree of care, and the court should have so instructed the jury. . . .

*Buckskin Joe's*, 396 P.2d at 939.

In the present case, we likewise find it is not important whether appellees were serving as a carrier or engaged in activities for amusement, rather the important factors are that appellant, who was injured when the boat hit rough seas, had surrendered herself to appellees' care and custody, and that she had given up her freedom of movement and actions. Therefore, under circumstances of this case, appellees had exclusive possession and control of facilities used in conduct of their business and they should be held to a high degree of care. The trial court erred by not instructing the jury accordingly.

We next determine whether this error was harmful. For this Court to reverse on a jury charge error, the appellant must show harmful error. *Boatland, Inc. v. Bailey*, 609 S.W.2d 743, 749–50 (Tex.1980). Error in the jury charge is reversible if it probably caused rendition of an improper judgment. TEX. R. APP. P. 44.1(a); *Timberwalk Apts., Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex.1998). To determine harm, we must consider the entire record, including the parties' pleadings, the evidence and the charge. *Timberwalk Apts.*, 972 S.W.2d at 756. Using the wrong legal standard when determining liability constitutes error that certainly would cause rendition of an improper judgment. *Graham v. Tyler County*, 983 S.W.2d 882, 885 (Tex.App.-Beaumont 1998, no pet.).

In the present case, the issue of negligence was closely contested, and the jury in fact found that both appellant and appellees were negligent, assigning proportions of negligence to each. In light of the fact that the case was closely contested, we find that the erroneous jury instruction "probably caused the rendition of an improper judgment," as the jury's proportionment of negligence would have almost certainly been different had the jury been properly instructed that the appellees were to be held to a higher standard of care. TEX. R. APP. P. 44.1(a). Accordingly, we find that the trial court's error was harmful and we sustain appellant's issue number three.

The judgment of the trial court is reversed and this cause is remanded for further proceedings consistent with this opinion.

DORSEY, Justice, dissenting on motion for rehearing en banc.

This case presents an issue of first impression in this state. The issue, broadly stated, is what standard of care should apply when a passenger, who knowingly accepts a thrill ride on a speed boat, sues over an injury suffered during the ride.

The majority holds that appellees, the speed-boat operators, were acting as a common carrier at the time Elmer rode in their boat, and therefore, are subject to a higher standard of care. Because I find that appellees were not acting as a common carrier and that Elmer accepted the risk, I would hold that the trial court instructed the jury on the correct standard of care.

A common carrier has been defined as "one who holds himself out to the public as engaged in the business of transporting persons or property from place to place, for compensation, offering his services to the public generally." *BML Stage Lighting, Inc. v. Mayflower Transit, Inc.*, 14 S.W.3d 395, 402 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). The law is well settled that public common carriers owe passengers the duty to exercise the highest degree of care in the operation of the conveyance and in the boarding and alighting of passengers. *Howell v. City Towing Assoc., Inc.*, 717 S.W.2d 729, 732 (Tex. App.-San Antonio 1986, writ ref'd n.r.e.); *Bragg v. Houston Elec. Co.*, 264 S.W. 245, 249 (Tex.Civ.App.-Beaumont 1924), *aff'd*, 276 S.W. 641 (Tex. Comm'n App.1925, judgm't adopted). The only Texas cases imposing a higher standard of care on a *motor vehicle operator* involve common carriers. *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 212 (Tex.1989). Texas courts base the decision to impose this heightened standard on the nature of the business of carriage. *Id.* Those in the business of carrying passengers and goods who hold themselves out for hire by the public have the duties of a common carrier. *Id.* at 213.

Here, Elmer's ride was in the nature of a thrill ride, that is, a fun, exciting ride in a speed boat. Appellees are not in the business of carriage for hire as that term is understood. Their method of service is different from public common carriers like trains, buses, taxis, and airlines. The latter are in the business of carrying passengers and goods over routes of various lengths and distances while appellees are concerned with moving people along a specified route and returning them to the same point at which the ride began.

Further, prior to taking the ride, the boat's captain gave Elmer a safety lecture, which included the information that the ride was rougher at the front of the boat. Though Elmer had a history of osteoporosis and had taken medication which weakened her skeletal structure, she did not tell the captain, or the appellees, of this serious medical condition, which leaves a person prone to spinal injury. Rather, she decided to position herself closer towards the bow where she knew she could experience a rougher ride. Thus, she knowingly accepted the risk of spinal injury. Had she told appellees of her medical condition, they could have taken steps to prevent her injury by seating her in closer to the stern, traveling at a low speed to minimize the ride's roughness, or they could have forbidden her from riding in the boat altogether. Morever, assuming that appellees were acting as a common carrier in this case, a lower standard of care is required when passengers become ill. This is because illness, unlike the conveyance of passengers, is not within the control of the carrier. *Howell*, 717 S.W.2d at 732.

I would hold that the trial court did not err by refusing to instruct the jury that appellees owed Elmer more than ordinary care. I would grant the motion for rehearing *en banc* and affirm the trial court's judgment. For these reasons, I respectfully dissent.