# BANNER v. WINTON.—186 S. W. (2d) 222.

Middle Section. November 4, 1944.

Petition for Certiorari denied by Supreme Court, March 7, 1945.

70

Walter M. Haynes and John F. Green, both of Winchester, for plaintiff.

Joe Frassrand and Frank Hickerson, both of Winchester, for defendant.

HOWELL, J.  This is a suit for damages for personal injuries brought by the plaintiff, Barbara Banner, who was twelve years of age at the time of her injuries and who sued by her mother as next friend, against Ellis Winton, doing business as the Cumberland Valley Shows, who was the owner and operator of a carnival or various amusement devices, including one known as the "Loop-the-Loop".

The declaration alleged that this Loop-the-Loop was being operated at Winchester, Tennessee, in August 1941, by the defendant and his assistants and that plaintiff with some friends purchased tickets to ride on it and did enter one of the baskets or cages and took hold of the brace or bar provided for the purpose of holding on and otherwise complied with the rules and instructions to riders, and that the cage or basket started its operation and after making a few revolutions it suddenly, without any warning, violently reversed its motion or jerked with such force that she was thrown down on the floor of the cage and received the injuries complained of. The dec-

laration further alleged that after the plaintiff had been so thrown down, the device continued to revolve, throwing her around on the floor of the cage notwithstanding the fact that the operator of the device saw or could have seen her predicament and could have prevented or lessened her injuries by stopping the revolutions of the basket or cage. It further alleged that the plaintiff received a severe blow across the bridge of her nose and on her forehead, which caused a generalized cellulitis of the nose, cheeks, eyes and forehead, necessitating two operations and the services of doctors and requiring her to spend a great deal of time in the Vanderbilt Hospital at Nashville under the care of a specialist in such injuries and that these injuries resulted in a permanent flattening of her nose and infection of both the antra and ethmoid sinuses, causing great pain and suffering and a permanent disfigurement of her face. It was further alleged that these injuries were proximately caused by the negligent operation of this Loop-the-Loop by the defendants and his agents.

The defendant filed a plea of not guilty and the case was heard by the Court and a jury and resulted in a judgment for the plaintiff for $7,000 which was reduced to $6,000 by the trial judge in passing upon a motion for a new trial.

The defendant has perfected an appeal in error to this Court and has assigned errors which we will not discuss separately.

Several assignments of error raise principally the question whether or not there is any evidence to support the verdict of the jury.

The plaintiff and other witnesses testified that after the Loop-the-Loop was started and while she was in the cage, it jerked or reversed with such force and vio-

lence that the plaintiff could not retain her hold on the braces and was thrown to the bottom or floor of the cage and that her injuries were caused by the force of this fall and being thrown around on the floor of the cage by the failure of the operator to stop the motion of the device. A witness Mannie Gibbs says she called to the operator to stop the machine and Mrs. Pearl Brannan says the crowd hollered to the operator to stop it but that it continued to revolve. Witness for the defendant testified that the Loop-the-Loop could have been stopped without any further revolution. We are of the opinion that this evidence and that of other witnesses for the plaintiff was sufficient to support the verdict of the jury.

Several assignments of error complain of the charge of the Court with reference to the degree of care required of the defendant under the law.

We think the charge of the Court was in conformity with the law applicable to such cases as held by the Supreme Court in the case of Tennessee State Fair Association v. Hartman, reported in 134 Tenn. 159, 183 S. W. 735. In that case the Court said:

"The matter of merit in the appeal depends on the solution of a single question—whether the proper degree of care was imposed on Davis by the court in the charge of the jury.

"The trial judge gave instructions as follows:

" 'The law demands a degree of care higher than ordinary care from a carrier of passengers for hire. It demands of such carriers the highest degree of care—that care which the most prudent man would be expected to exercise under circumstances similar to those shown in evidence, in the design, construction, maintenance, inspection, and repair of his vehicles and its approaches and exits.'

"It is complained that it was error to burden Davis with the degree of care exacted of a common carrier of passengers. There seems to be little authority on the status, in this respect, of the operators of merry-go-rounds, scenic railways, and amusements of like type.

\* .\* \* \* \*

"We are of opinion that the Court of Civil Appeals did not improperly hold that the rule of care devolved by law on a common carrier was applicable in the present case. Of course the fact that the person injured was led to ride on the Ocean Wave by motives of curiosity or pleasure cannot operate to distinguish the case, any more than it did the decisions in those cases involving scenic railways and sight-seeing automobiles. All persons were invited to make use of the device who would pay the fare. There were unusual risks which the operator was bound to anticipate and protect against in the construction and operation of the mechanism of carriage, since the patrons had no opportunity to do so.

"We are not to be understood as saying that the operator was a technical common carrier, or that all of the rules governing such a carrier are applicable to him. We are treating only of the measure of care to be observed by him.

"The responsibility of Davis in that regard being equivalent to that of a common carrier, it follows that the falling of the carriage contrivance· was, in connection with the attendant circumstances, evidence tending to show that it was of faulty construction or out of repair; and the case properly went· to the jury, over the defendant's motion for peremptory instructions."

Another assignment complains of errors in the admission of testimony as to complaints made by the plaintiff and as to medical and other expenses. We see no

prejudicial errors in the admission of testimony that affected the verdict of the jury.

It is also assigned as error that the verdict of the jury was excessive. Considering the injuries received by the plaintiff, a twelve year old girl, we do not think the verdict of $6,000 is excessive. Her nose is flattened, a condition that might be improved upon only by plastic surgery, the sinusitis, according to the medical testimony, cannot be entirely cured and complications may arise. She underwent two operations at the Vanderbilt Hospital and suffered great pain and these conditions may be permanent.

It results that the assignments of error are overruled and the judgment of the trial Court is affirmed.

The plaintiff will be given a judgment here against the defendant for Six Thousand Dollars ($6,000) with interest from June 13, 1944, and all the costs of the cause.

Affirmed.

Felts and Hickerson, JJ., concur.