WALTER LYONS and OAK RIDGE PROPERTIES, INC. v. SHERRY LYNN WAGERS, b/n/f ELDON E. WAGERS.

WALTER LYONS and OAK RIDGE PROPERTIES, INC. v. ELDON E. WAGERS.

WALTER LYONS and OAK RIDGE PROPERTIES, INC. v. MALISIA ANN JOHNSON, b/n/f LEE JOHNSON.

WALTER LYONS and OAK RIDGE PROPERTIES, INC. v. LEE JOHNSON.—404 S.W.(2d) 270.

Eastern Section. January 14, 1966.

Certiorari Denied by Supreme Court May 16, 1966.

Hodges, Doughty & Carson, Knoxville, and Joyce, Anderson & Wood, Oak Ridge, for plaintiff in error, Oak Ridge Properties.

O'Neal, Jarvis, Parker & Williamson, Knoxville, for plaintiff in error, Walter Lyons.

William A. Bomar, Oak Ridge, for defendants in error.

COOPER, J.   Referring to the parties as they appeared below, the minor plaintiffs, Malisia Ann Johnson and Sherry Lynn Wagers, filed suits by next friend in an effort to recover damages for personal injuries received in a fall from an amusement ride known as the "Merry Mixer". The father of each minor child also filed suit to recover the cost of providing medical care for his child, and to recover for the loss of her services. The named defendants in the suits were John Lee Pennington, who was operating the ride, his employer, Walter Lyons,

and the Oak Ridge Properties, Inc., as lessor of the premises on which the ride was located.

In their declaration, the plaintiffs charged, in substance, that the negligence of the defendants Walter Lyons and Oak Ridge Properties, Inc. in failing to inspect, discover and correct the defects in the "ride" before permitting its use by the public, and the negligence of the defendant John Pennington, in the performance of his duties as an employee of the defendant Lyons, in operating the ride at fast, irregular speeds and in failing to heed the warning cries of the minor plaintiffs. As to Lyons, there was the additional charge that he was guilty of proximate negligence in entrusting the operation of the amusement ride to an inexperienced operator.

The defendants each filed special pleas denying all averments of negligence, and charging that the accident was due to the negligence of the minor children in standing up during the ride.

At the conclusion of the proof, the several defendants moved for a directed verdict. These motions were overruled, and the cases were submitted to the jury under proper instructions. The jury awarded the plaintiffs verdicts against the defendants Walter Lyons and Oak Ridge Properties, Inc. and exonerated John Lee Pennington of any negligence in the operation of the amusement ride. Damages were assessed at $500.00 in the case of Lee Johnson, $1250.00 in the case of Malisia Ann Johnson, $1500.00 in the case of Eldon Lee Wagers and Sherry Ann Wagers was awarded $5,000.00. These verdicts were approved by the trial court, and, on the overruling of defendants' motions for a new trial, this appeal in error resulted.

On appeal, both Walter Lyons and the Oak Ridge Properties, Inc. insist that there was no material evidence to support the verdicts in favor of the plaintiffs. In addition, the defendant Walter Lyons questions the court's action in permitting the introduction of numerous photographs, and the amount of the verdicts.

To determine if there is any material evidence to support the jury's verdict, we are required "to take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict." D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S.W.(2d) 897.

When so reviewed, the evidence in the present case shows that the defendant Oak Ridge Properties, Inc. owns and manages a shopping center in Oak Ridge, Tennessee under the trade name of "Downtown Oak Ridge". On February 20, 1958, Oak Ridge Properties, Inc. leased vacant land in the shopping center to the defendant Walter Lyons for the operation of an amusement park to be known as "Funland", and which was to consist of at least 4 rides—the type rides to be approved by the lessor. The lease provided for the payment of a fixed annual rental of $1200.00, payable in 12 equal monthly installments, and for the payment of 20% of gross sales in excess of $500.00 per month. The burden of installing the rides and maintaining them in good repair was imposed on the lessee Lyons, with the lessor Oak Ridge Properties reserving the right to go on the premises to examine the equipment and to make any necessary repairs or changes deemed necessary. The lease also provided that the lessee would cooperate with the lessor and the other occupants of the shopping center for the

overall promotion of the center, including, but not limited to, hours of operation, advertising, and special sales.

Lyons complied with the terms of the lease and installed and operated four rides. The four in operation for the 1963 season were a "Ferris Wheel", a "Merry-Go-Round", a "Boat Ride", and a "Merry Mixer".

"Funland" was opened to the public on April 5, 1963 and operated without incident until the afternoon of April 7, 1963, when the plaintiffs fell from the ride known as the "Merry Mixer".

The "Merry Mixer" is a machine approximately 40 feet in diameter. Four arms radiate from the center of the machine, and there are 4 seats attached to each arm. Each seat is designed to carry two passengers and, to insure safety, each seat has a safety bar and a safety chain held closed by springs.

The overall machine is driven by a gasoline engine and rotates in a clockwise direction. The clusters of seats on each arm are so constructed that they turn in a counterclockwise direction at the same speed that the machine rotates in a clockwise direction.

The minor plaintiffs purchased tickets for a ride on the "Merry Mixer", and chose to ride in the same seat. Malisia Johnson fastened both the safety bar and the safety chain, noting at the time that her hand was stained with dry rust from the springs on the safety latches. Pennington, the operator, also checked to see if the safety devices were "hooked".

Pennington testified, and evidently the jury found, that he operated the ride in the normal manner, that is, he started it off slowly, pulled the throttle out and permitted

the ride to build up speed; that he then alternately reduced and increased the speed throughout the ride to give the impression of "great" speed.

The minor plaintiffs testified that the cluster of seats in which they were riding did not turn in a counterclockwise direction as did the others, but remained almost stationary. They further testified that there was a loud, clanking noise from beneath their cluster of seats, making them believe the ride was "tearing up", and that Malisia Johnson twice called out to the operator of the ride but to no avail; that immediately after the second call, the machine gave a "real sudden jerk".

Malisia Johnson testified that the "jerk" caused the safety bar to come open, and caused her and Sherry Wagers to be thrown to the ground.

Sherry Wagers testified that she knew nothing after the "jerk", until she found herself on the ground.

Linda Venable and Gail Campbell, who were riding the "Merry Mixer" at the time the accident occurred, testified that the plaintiffs' cluster of seats was not turning normally, and also corroborated plaintiffs' testimony that the machine suddenly jerked, and that plaintiffs were thrown to the ground. These witnesses further testified that the safety bar on their seat came open at the same time, and that Linda was prevented from falling only by the action of Gail Campbell in holding her in the seat. They described the latch on the safety chain on their seat as being "old and rusty."

Eldon Wagers testified that, after seeing his child in the emergency room of the hospital, he went to "Funland" to inspect the ride, but was not permitted to do so.

He was able to see, however, that several of the safety chain latches were standing partially open, though he could not state that they were on the seat in which the minor plaintiffs were riding at the time of their fall.

A week after the accident, Cleo Calage rode the "Merry Mixer" to check on its condition and testified that the clamp to the seat in which she rode was "shakey and loose" and that she saw at least six snaps on the safety chains which were standing partially open.

There was also testimony that none of the latches and springs in use on the safety fixtures of the "Merry Mixer" had been replaced in the three years that the ride had been in operation.

On at least two occasions, the appellate courts of this state have stated that the operator of an amusement ride owes his patrons the same degree of care owed by a common carrier to its passengers, which is "the highest degree of care—that care which the most prudent man would be expected to exercise under circumstances similar to those shown in evidence, in the design, construction, maintenance, inspection, and repair of his vehicle and its approaches and exits." Tennessee State Fair Association v. Hartman, 134 Tenn. 159, 183 S.W. 735; Banner v. Winton, 28 Tenn.App. 69, 70, 186 S.W.(2d) 222.

We think a jury reasonably could find from the above evidence that the defendant Walter Lyons breached this duty; that the proximate cause of the accident and resulting damages was the defective safety devices on the seats of the "Merry Mixer", and that the defects were of such a nature that they were known to the defendant Lyons, or should have been known to him if he, or his

employees, had made an inspection commensurate with the "high degree" of care owed the minor plaintiffs.

Turning now to a consideration of the liability, if any, of the Oak Ridge Properties, Inc., the defendant in its brief concedes that "an exception to the usual rules of liability of a landlord exists in certain situations involving amusement rides similar to the Merry Mixer involved in the cases at bar", but insists that there is no material evidence in the record to bring it within the exception.

The exception referred to by the defendant, often called the amusement park or amusement ride doctrine, was first voiced by our Supreme Court in the case of Hartman v. Tennessee State Fair Association, et al., 134 Tenn. 149, 183 S.W. 733, and more recently in Gentry v. Taylor, 182 Tenn. 223, 185 S.W.(2d) 521.

In the Hartman case, supra, the court pointed out that "[i]n recent years quite a body of law has grown up in relation to the liability for negligence in the operation of amusement apparatus. A number of these cases pass on the question of the liability of a fair association or an amusement park owner, charging a general fee for admission to the grounds, for the negligence of an independent contractor who furnishes attractions on the premises, and it is the general rule that such a defendant is, as the inviter of the patronage, under the obligation of exercising reasonable care to have and keep the premises and equipment reasonably safe for visitors. A defendant is not relieved of this duty by reason of the fact that he had leased a part of the premises or the equipment to an independent contractor."

In the Gentry case, supra, after reiterating the duty owed to the public by the lessor of property for public

amusement purposes, the Court goes on to state that "[a] review of the cases found in the annotations above cited [22 A.L.R. 610, Subdivision V, b; 29 A.L.R. 29; 44 A.L.R. 203; 53 A.L.R. 855; 61 A.L.R. 1289; 98 A.L.R. 557, 562] and others seems to limit the liability of the owner or lessor under the exception above noted to those situations in which one or more of the following elements appear: (1) An interest more or less direct and substantial in the presence of the visitor, as, for instance, a participation in the profits of the operation. (2) An exercise of, or retention of, the right to exercise supervision and control of the operation. (3) A holding out to the public of a representation of ownership interest or control tending to induce patronage. (4) An operation of an instrumentality or device, although by a lessee, so inherently dangerous in construction or operation as to charge the owner-lessor with responsibility for continuing supervision and exercise of ordinary care, in application of the nondelegable duty doctrine."

██ We think the jury in the present cases reasonably could find that the defendant's retention of the veto power over the type rides to be operated in "Funland", its permitting the operation of a ride which, if operated improperly or in a defective condition, would be patently dangerous to the minor children normally expected to be patrons, its reservation of the right to go on the premises to examine the equipment and to make any necessary repairs or changes deemed necessary, its sharing on the percentage basis in the gross profits from the ride, and its requirement that the lessee cooperate in the promotion of the shopping center in its operation and advertising of "Funland," imposed upon the defendant, as the lessor of the property for public amusement pur-

poses, the duty of exercising ordinary care to provide against defects in the equipment which would render them unsafe for the use intended. Further, we are of the opinion that the jury reasonably could find from the above evidence that the exercise of ordinary care would require the defendant to make an inspection of the rides in "Funland," including the "Merry Mixer," before the season opened and that such an inspection would have revealed the defects which proximately caused the accident and resulting injuries and damages to plaintiffs. Therefore, a jury reasonably could find that no inspection was made, or, if made, ordinary care was not exercised.

As a consequence, we have concluded that there was material evidence of proximate negligence on the part of the defendant, Oak Ridge Properties, Inc.

The defendant, Walter Lyons, also questions, in his assignments of error, the action of the trial court in admitting in evidence photographs of the safety device latches taken 14 months after the accident, and the use made of the photographs by various witnesses in illustrating the condition of the latches at the time they observed the equipment.

In discussing the assignment, the defendant, though conceding that the introduction of the photographs rests in the sound discretion of the trial judge and that the photographs were admitted for a limited purpose, insists that there "was a tendency on the part of the plaintiffs and the witnesses for the plaintiffs to rely on these photographs as if they were the condition existing at the time of the injury." The defendant Lyons has not cited us to any specific evidence in the record to support his insistence as required by our Rule 11(3);

however, we have read the record with this assignment in mind and are convinced that the photographs were admitted properly and were used properly.

Finally, the defendant Lyons insists that the verdicts of the jury were excessive, and that the trial court erred in failing to award a new trial in each case. As noted above, Sherry Wagers was awarded $5,000.00, and her father, Eldon Wagers, $1500.00. In the Johnson cases, Malisia Johnson was awarded $1250.00, and her father, Lee Johnson, received an award of $500.00.

In determining if the verdict is within reasonable bounds, this court must take into consideration ''the nature and extent of the injuries, the suffering, expenses, diminution of earning capacity, inflation and high cost of living, age, expectancy of life and amount awarded in other similar cases.'' Monday v. Millsaps, 37 Tenn.App. 371, 264 S.W.(2d) 6, and numerous cases there cited. In doing so, we are constrained to follow the general rule, safeguarding the constitutional right of trial by jury, which requires us to take the strongest legitimate view of all evidence tending to uphold the verdict. See D. M. Rose & Co. v. Snyder, supra, 185 Tenn. 499, 206 S.W. (2d) 897. Further, we must bear in mind that the amount of the verdict in a personal injury case is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the evidence. Reeves v. Catignani, 157 Tenn. 173, 176, 7 S.W.(2d) 38, 39; City Water Co. v. Butler, 36 Tenn.App. 55, 251 S.W.(2d) 433, 439. ''Moreover, the question of the excessiveness of a verdict is generally one for the determination of the trial court in the first instance, and its action in granting or refusing to grant a new trial on that ground will not

be disturbed on appeal unless an abuse of discretion is shown.'' 15 Am.Jur., Damages, Sec. 205, p. 622, quoted with approval in Monday v. Millsaps, 37 Tenn.App. 371, 264 S.W.(2d) 6, and Town of Clinton v. Davis, 27 Tenn. App. 29, 177 S.W.(2d) 848.

In the Wagers' cases, the record shows that Sherry Wagers received a fracture of the left collar bone, requiring an operation under general anesthesia for the insertion of a pin; that as the result, she lost a week from school. Further the record shows that six of Sherry's teeth were loosened by the impact of the fall. Four of the teeth tightened within a few weeks, but two abscessed, requiring the removal of the roots. This. of course, caused the teeth to die and turn black. Sherry also suffered a small laceration of her right leg, and various minor contusions and abrasions, including a contusion to the back of her head that caused marked swelling for several days. Also of note in the fact that the shoulder operation left a surgical scar approximately 2 inches in length and which is visible when Miss Wagers wears evening clothes and some types of sport clothes.

Expenses incurred, or to be incurred, by Mr. Wagers in treating Sherry's injuries approximate $750.00.

Malisia Johnson received an injury to the lumbar area of the back, marked by definite muscle spasm and requiring heat, rest and medication for pain and to relax the spastic muscles. The treating doctor also limited Malisia's activities for the remainder of the school year. In addition, Malisia received abrasions to the cheek, large bruises with hemorrhage into the skin on both thighs, and had a tooth loosened. The tooth was one from which the root had been removed. The tooth abscessed within a

month of the accident, and had to be pulled. The treating dentist testified that he could not tell with medical certainty that the abscess was caused by the blow received in the fall from the "Merry Mixer" as he had not examined the tooth within a week after the accident; however, he did state that an abscess could be caused by a blow to the tooth.

Medical expenses incurred by Lee Johnson in providing treatment for his daughter approximated $75.00, and dental expenses incurred, or to be incurred, amount to $357.00.

On reviewing the above evidence of injuries and special damages in the light of the authorities set out above, we have concluded that none of the awards was excessive.

Judgments are affirmed. Costs are adjudged against the defendants, Walter Lyons and Oak Ridge Properties, Inc., equally.

McAmis, P.J., and Parrott, J., concur.