314 So.2d 626 (1975)
Meryl SERGERMEISTER, a Minor by and through Her Father and Next Friend, Norman Sergermeister, and Norman Sergermeister, Individually, Appellants,
v.
RECREATION CORPORATION OF AMERICA, INC., a/k/a Pirates World, and Main Insurance Company, an Illinois Corporation, Appellees.
No. 74-776.
District Court of Appeal of Florida, Fourth District.
June 13, 1975.
Edward P. Busch of Ser & Keyfetz, Miami, for appellants.
David A. Graham of Preddy, Haddad, Kutner & Hardy, Fort Lauderdale, for appellees.
WALDEN, Judge.
Plaintiffs, via jury trial, sought damages on account of personal injuries suffered by the minor plaintiff. A defendant's verdict and judgment resulted. Plaintiffs appeal. We affirm.
The minor plaintiff was a patron at an amusement park. Her finger was pinched and injured at the conclusion of her ride upon an amusement park device, a ride known as "Lover's Coach." According to plaintiffs' case, the minor plaintiff was exiting from one of the ride's cubicles or cars when her finger was pinched by the operation  opening and closing  of the car's safety restraining gate or bar.
There are three appellate points. We shall discuss 1 and 2, which center upon the refusal of the trial court to give certain charges requested by plaintiffs. Point 3, dealing with the order denying plaintiffs' motion for new trial, is without merit and not such as to require comment.
Plaintiffs' grievances must be considered in light of the trial court charges actually given. The jury was correctly charged from Standard Jury Instruction Nos. 3.5 and 4.1, as follows:
"Therefore, the issues for your determination on the claim of the plaintiff, Meryl Sergermeister, against the defendant, Recreation Corporation of America, are whether the defendant negligently failed to maintain his premises in a reasonably safe condition or failed to correct or warn the plaintiffs of the dangerous condition of which the defendant *627 knew or should have known by the use of reasonable care, and which the plaintiff neither knew or should have known by the use of reasonable care, and, if so, whether such negligence was a legal cause of the injury or damage sustained by Meryl Sergermeister."
* * * * * *
"Negligence is the failure to use reasonable care. Reasonable care is that degree of care which a reasonably careful person would use under like circumstances. Negligence may consist either in doing something that a reasonably careful person would not do under like circumstances, or in failing to do something that a reasonably careful person would do under like circumstances." (Emphasis supplied.)

I.
Plaintiffs in their first point are dissatisfied with the above Standard Jury Instructions which provide the traditional and approved standard of reasonable care, that which a reasonably careful person would use under like circumstances. Plaintiffs contend, instead, that all amusement park operators owe a higher degree of care and that anyone injured on amusement park premises is entitled to a charge to that effect as a matter of law.
Thus, plaintiffs say the trial court erred when it refused to give their custom drafted charge, not found in the Standard Jury Instructions. It is as follows:
"The court has determined and now instructs you as a matter of law that it is the duty of the owner or proprietor of places of public amusement to exercise all proper precautions, skills, and care commensurate with the circumstances to make the place as little dangerous as such a place can reasonably be made and to maintain the place and every part of it in a reasonably safe condition for the uses to which it may rightly be devoted, Paine (sic) v. Clearwater (1944, 155 Fla. 9, 19 So.2d 406), Turlington v. Tampa Electric Company (Fla. 1911) 62 Fla. 398, 56 So. 696.
"The Court also instructs you as a matter of law that the owner or propriator (sic) of places of public amusement are subjected to a higher degree of care and are held to somewhat stricter accountability for injuries to patrons [emphasis added] than owners of private premises are held for injuries to persons coming on their premises. Mosqueda v. Paramount Enterprises, Inc. (1959) Fla.App.) 111 So.2d 63, Wells v. Palm Beach Kennel Club, 1948, 160 Fla. 502, 35 So.2d 720, Reinbow (sic) Enterprises v. Thompson, Fla. 1955, 81 So.2d 208."
It is our opinion that the plaintiffs' proffered charge was inappropriate and that the trial court correctly rejected it.
As to its Paragraph 1 we have no particular comment. It would not be reversible error, in our judgment, had it been given. It adds nothing and is mere surplusage, the basic legal premise having been covered in the charges as given. Its notion would be more properly mentioned in jury argument.
As to Paragraph 2, we feel it is incorrect, out of context and misleading. It would have been reversible error had it been given.
We look now to the cases cited by plaintiffs in their requested instruction as a basis for persuading the court that the instruction was correct and mandated:
In Rainbow Enterprises v. Thompson, 81 So.2d 208 (Fla. 1955), a plaintiff's verdict was affirmed. Plaintiff tripped and fell upon a stairway at a tourist attraction. The Supreme Court held:
"While we do not mean to imply that the operator of an amusement or entertainment attraction of the kind involved in this case is an insurer of the safety of its patrons, we do subscribe to the view *628 expressed by Mr. Justice Terrell in Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720, 721, wherein it was stated:
`Places of amusement where large crowds congregate are required to keep their premises in reasonably safe condition commensurate with the business conducted. If the owner fails in this, and such failure is the proximate [cause] of injury to one lawfully on the premises, compensatory damages may be recovered if the one injured is not at fault. J.G. Christopher Co. v. Russell, 63 Fla. 191, 58 So. 45, text 47, Ann.Cas. 1913C, 564. * * *'" (Emphasis supplied.) 81 So.2d at 210.
In Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720 (1948), a directed verdict for defendant was reversed. Plaintiff was injured when she stepped upon an empty bottle in the grandstand aisle of a dog track. The decision was reversed with this critical comment with reference to one operating a place of amusement such as a race course:
"We do not mean to imply that they are insurers of the safety of their patrons, but we do say that reasonable care as applied to a race track requires a higher degree of diligence than it does when applied to a store, bank or such like place of business." Id. at 721. (Emphasis supplied.)
In Payne v. City of Clearwater, 19 So.2d 406 (Fla. 1944), a final judgment on demurrer for defendant was affirmed. The case dealt with a slippery diving board at a municipal beach, and the court adopted the principle:
"The duty of an owner or operator of a public amusement place is clearly defined in the work supra, at page 1562, par. 644, viz.: `The owner or operator of a public place of amusement or entertainment is not the insurer of the safety of his patrons, but owes to them only the duty of reasonable care. He is bound to exercise only the degree of care that would be expected of an ordinarily careful and prudent person in his position, and his duty is fulfilled when he makes the place as little dangerous as such a place can reasonably be made, having regard to the contrivances necessarily used in conducting such a place." Id. at 408. (Emphasis supplied.)
In Turlington v. Tampa Electric Co., 62 Fla. 398, 56 So. 696 (1911), a final judgment on demurrer for defendant was reversed. Plaintiff suffered injuries at an amusement park when he used defendant's diving board and struck his head on the bottom, the water being only about 3 ft. in depth and there being no warning sign. These statements are germane:
"One who maintains a public resort is required by law to keep it in a reasonably safe condition for those who properly frequent the place. Where the public is invited to attend a resort, it is the duty of the one who so invites to exercise all proper precaution, skill, and care commensurate with the circumstances to put and maintain the place and every part of it in a reasonably safe condition for the uses to which it may rightly be devoted." 56 So. 698. (Emphasis supplied.)
In Mosqueda v. Paramount Enterprises, Inc., 111 So.2d 63 (3d DCA Fla. 1959), a directed verdict for defendant was reversed and the case ordered to a jury. Plaintiff, a patron at a theater, had been injured when a chair in the ladies' lounge collapsed as she sat upon it. The court noted:
"This was a place of amusement to which the public was invited. The operators of a place of amusement are not the insurers of the safety of their patrons but are required to exercise reasonable care. However, there is imposed upon such operators a higher degree of diligence than is required of *629 stores, banks and other places of business. See Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720; Rainbow Enterprises v. Thompson, Fla. 1955, 81 So.2d 208, 55 A.L.R.2d 861. The appellee could reasonably foresee or should have foreseen from the nature of the attraction that numerous persons would patronize the theater and a considerable number thereof would make use of the facilities in the ladies' lounge, including the chairs.
"The facts here were sufficient to submit to a jury, for its determination, the issue of whether or not the inspection made by the appellee of its facilities to which the public was invited, was an adequate discharge of its obligation of reasonable care." Id. at 65. (Emphasis supplied.)
Reviewing, none of these authorities require or even suggest that an instruction of a high degree of care should be given when an amusement park is a defendant. Rather, they, with some specificity, endorse the proposition that the duty owed is one of reasonable care, all as encompassed in this trial court's instruction as given. See 2 Fla.Jur., Amusements §§ 40, 44 (1963):
§ 40
* * * * * *
"Generally, it may be said that proprietors of places of public amusement or entertainment are held to somewhat stricter accountability for injuries to patrons than owners of private premises are held for injuries to persons coming on their premises. The duty owing and that the proprietor or keeper of a place of amusement must discharge is a duty to exercise that degree of care and prudence that an ordinary prudent person would ordinarily exercise in the same circumstances and with reference to the same conditions. (Emphasis supplied.) Id. at 242. * * *"
§ 44.
"But what amounts to due care depends not only on the facts and circumstances of the particular case, but on the nature, construction, manner of operation, and the like, of the particular place of amusement, device, or mechanism in the suit. The care required is commensurate with the risk involved." (Emphasis supplied.) Id. at 251.
It is clear the decision as to whether a defendant has exercised ordinary or reasonable care is a jury question to be considered by it in light of the circumstances prevailing. Mertz v. Krueger, 58 So.2d 160 (Fla. 1952). It is notable that the cases relied upon by plaintiff dealt with the appellate review of trial court decisions determining liability on either a motion to dismiss (demurrer), motion for directed verdict, or on post-judgment review. Wells v. Palm Beach Kennel Club, supra; Turlington v. Tampa Electric Co., supra; Mosqueda v. Paramount Enterprises, Inc., supra; Payne v. Clearwater, supra; Rainbow Enterprises v. Thompson, supra. When the courts spoke of a high degree of care, they were indicating the necessity of a jury evaluation of reasonable care;
"Under such circumstances the question of whether or not defendants exercised ordinary care to protect its patrons, was a question for the jury under appropriate instructions." Wells v. Palm Beach Kennel Club, supra, 35 So.2d at 721. (Emphasis supplied.)
We recognize that some appellate comments in the cited cases notably Wells v. Palm Beach Kennel Club, supra, project the notion that reasonable care as applied to a place of amusement requires a higher degree of diligence than it does when applied to some business place.
We interpret that language and offer these comments:
A. Referring back to the approved given instruction, it provides for reasonable care *630 and explains, "reasonable care is that degree of care which a reasonably careful person would use under like circumstances." We believe, then, that reasonable care is the standard, but that its requirements go up and down depending on the circumstances and the jury's view as to what a reasonable man would do under those circumstances. The phrase, "under like circumstance," is akin to a termperature gauge. Thus, the reading, whether high or low, varies depending on the circumstances.
B. Necessarily the appellate court comments are restricted to the facts of the particular case under review. In Wells v. Palm Beach Kennel Club, supra, for instance, the trial court directed a verdict, thereby deciding that the standard of ordinary care had been met. The Supreme Court reversed and said that under the circumstances of that case the level of reasonable care was higher and at least high enough for the jury to determine the question.
It is precisely because the care required is commensurate with the circumstances involved (a roller coaster that escapes its couplings is a different circumstance from a safety bar on a Lover's Coach that has a crevice capable of pinching a finger) that the instruction given by this trial court is appropriate. The phrase "in like circumstances" covers all possibilities and under the instructions as given the jury could properly apply a higher standard of care to an amusement park than to a bowling alley.
C. A careful comparison of the key portion of Paragraph 2 of the requested charge, when compared to the language of Wells v. Palm Beach Kennel Club, supra, reveals that same is misleading and somewhat out of context. This is true because the basic standard is "reasonable care" and that term has been omitted by plaintiff in favor of the provision of "a higher degree of care."
D. It would be legally unattractive to adopt plaintiffs' thesis, that, regardless of circumstance, every person injured on an amusement park is entitled to the higher degree of care jury charge. For example, consider Disney World. Why should it have a higher duty to one of its hotel or restaurant patrons as compared to a hotel or restaurant located outside its boundaries, where the circumstances are identical? We have theorized as to where this would lead or end; are all businesses to be categorized and a special instruction drafted to suit each category  one for amusement parks  one for shoe stores  one for libraries, etc.?
E. It is our view that the jury charge as given fits every category (except common carriers). Further, plaintiffs' thrust can be accommodated under that charge in the form of jury argument.
F. As we analyze it, a jury charge of the kind requested by plaintiffs, is tantamount to an impermissible comment on the evidence by the trial judge to the jury. He would be assessing the "circumstances." According to plaintiffs' theory, the trial court should determine from the facts whether the circumstances warrant a high, low, or medium grade of duty in order to meet the standard of reasonable care. Are there cases where the trial court should tell the jury that a lower degree of care is required? It's one thing for a trial judge to say it to the jury and quite another for an appellate judge to say it concerning an assessment on appeal.
And now to conclude on this point, it is our view that our decision is in harmony with Florida authority; that the cases cited by plaintiffs do not command nor sanction a jury instruction imposing a higher degree of care upon amusement park operators; that the correct criteria is reasonable care which may vary depending on the circumstances; and that in some Florida authority dealing with amusement parks the circumstances were such as to cause *631 the appellate court to say that the standard constituting reasonable care involved a higher degree of care when compared to some other kinds of businesses or to other circumstances.[1]See 2 Fla.Jur., Amusements § 40 et seq. (1963). See also Prosser on Torts, Negligence, § 34, Ch. 5 at 184, (1971).

II
Plaintiffs' second point complains of the trial court refusal to give their requested charge, "Implied Warranty of Safe Ride":
"You are instructed as a matter of law that the proprietor of an amusement park operated for profit enters into an implied contract with the patrons of an amusement ride to the effect that the Defendant will exercise a high degree of care to provide a safe ride and impliedly warrants that the rides offered to the public are free of defects and other conditions which create a dangerous or unsafe ride."
Plaintiffs argue that, "... a passenger injured on a common carrier may ground his suit in tort or contract, the latter stemming from the theory of implied warranty." This would appear to be the law. Colhoun v. Greyhound Lines, Inc., 265 So.2d 18 (Fla. 1972); Doyle v. City of Coral Gables, 159 Fla. 802, 33 So.2d 41 (1947). Plaintiffs go on to urge that the amusement device here is analogous to a common carrier and, hence, the doctrine of implied warranty is available. We have found no Florida case so holding.
In Coaster Amusement Co. v. Smith, 141 Fla. 845, 194 So. 336 (1940) the court affirmed a final judgment on a jury verdict *632 for plaintiff for damages resulting from the operation of a roller coaster. Faced with the appellate issue, the court approved the application of and charge on the doctrine of res ipsa loquitur under the facts of the case. We note the court cited to authority from other jurisdictions equating a roller coaster with a common carrier (since the plaintiff was thrown from the moving car) but in fact this was not an issue in that appeal. We have found no Florida authority directly on point and align ourselves with the reasoning in Firszt v. Capitol Park Realty Co., 98 Conn. 627, 120 A. 300 (1923):
"One traveling upon his lawful occasions must perforce use the ordinary means of transportation, and is practically compelled to place himself in the care of carriers of passengers, and so the rule applied to carriers holds them to the highest degree of care and diligence. On the other hand, one desiring for his delectation to make use of pleasure-giving devices similar to the one in question is under no impulsion of business or personal necessity. He is seeking entertainment, and, when invited by manager to avail himself of the equipment provided by certain forms of amusement, he can properly ask only that he be not exposed by the carelessness of those in charge of any given instrumentality to harm preventable by care appropriate to the operation of such instrumentality. It would have been entirely proper and feasible for the trial court, in elucidating the standard of ordinary care to the jury, by proper comment upon the evidence to have suggested that the operating hazard of an aeroplane swing was considerable, and that ordinary care required more, and more exact, supervision in its use than obtains in the case where there is little or no element of danger involved in any given device." 120 A. at 303, 304. (Emphasis added.)
See Albert v. State, 80 Misc.2d 105, 362 N.Y.S.2d 341 (C.A.N.Y. 1974); Pessl v. Bridger Bowl, 524 P.2d 1101 (Montana 1974); and 4 Am.Jur.2d, Amusements and Exhibitions, § 88 (1962):
"An owner or operator of an amusement ride or device is not an insurer of his patrons' safety, and the courts generally do not require of him the high degree of care exacted of common carriers of passengers for hire. However, the standard of care required of common carriers of passengers has been applied by some courts to certain kinds of amusement rides or devices, and some courts, while not regarding him strictly as a common carrier, have charged the owner or operator with a degree of care beyond `ordinary' or `reasonable' care.
"The measure or amount of care required will vary according to the hazards involved, or the dangers inherent, in the particular ride or device, for where the operating hazard is considerable, more exact supervision in its use is required than in cases where there is little or no element of danger. The owner or operator of the ride or device must use reasonable care to see that it is properly constructed and designed, maintained, and managed; and reasonable care in such respect is that which an ordinarily prudent person would exercise under like circumstances and in a like situation... ." Id. at 212, 213.
Since we do not equate the amusement park ride with a common carrier, the implied warranty claim permitted against common carriers, Colhoun v. Greyhound Lines, Inc., supra, cannot be utilized here. See 4 Am.Jur.2d Amusements and Exhibitions, § 102 (1962):
"... a complaint ... by the plaintiff for personal injuries ... sustained in a place of public amusement or in connection with amusement or sports devices or activities must, as a general proposition, be based on the theory of negligence, and the pleading, as in other negligence cases, must allege *633 facts to show the existence of a duty of the defendant to protect the plaintiff ... the ... injury as a result of such failure... ." Id. at 232.
Contra: Lyons v. Wagers, 55 Tenn. App. 667, 404 S.W.2d 270 (1966); Lewis v. Buckskin Joe's, Inc., 156 Colo. 46, 396 P.2d 933 (1964); 86 C.J.S. Theatres and Shows § 40 (1954).
And so it is our opinion the trial court here adequately and properly charged the jury. The charges given had the elasticity to accommodate the facts and circumstances of the case, together with the arguments of counsel.
Affirmed.
DOWNEY, J., and SILVERTOOTH, LYNN N., Associate Judge, concur.
NOTES
[1] The duty applicable to an amusement park defendant is a subject much discussed in all jurisdictions, but there is no complete accord in the results. There is some general agreement that a duty of reasonable care prevails. In 86 A.L.R.2d 352 (1962), it is said:

"It has been generally held that an owner, lessee, or operator of a `loop-o-plane', ferris wheel, or similar amusement device must exercise ordinary or reasonable care in the construction, maintenance, and operation of his premises and amusement device commensurate with the risks involved, to protect his patrons from injury." Id. at 353.
The annotation continues to say, however, that there is some authority for a high degree of care standard. In light of the Florida cases discussed, we align ourselves with authorities requiring a reasonable care standard, to be measured by the circumstances surrounding the occurrence. Pessl v. Bridger Bowl, 524 P.2d 1101 (Montana 1974); Lefort v. Ponchatoula Beach Dev. Corp., 292 So.2d 354 (1st Cir. La. 1974); Engstrom v. Huntley, 345 Pa. 10, 26 A.2d 461 (1942), in which the court said:
"The important fact is that the Tilt-a-Whirl was operated in the park owned and operated by the appellee who invited the public to become patrons of the amusement devices. Having invited them, appellee was required to exercise the measure of care owed to invitees. In Haugh v. Harris Brothers Amusement Co., 315 Pa. 90, 92, 172 A. 145, we said, `It is settled that one maintaining a theater or similar place of amusement for which admission is charged, is not an insurer, but must use reasonable care in the construction, maintenance, and management of it, having regard to the character of the exhibitions given and the customary conduct of patrons invited.'" 26 A.2d at 463.
Davidson v. Long Beach Pleasure Pier Co., 99 Cal. App.2d 384, 221 P.2d 1005 (2d DCA 1950); McCordic v. Crawford, 23 Cal.2d 1, 142 P.2d 7 (1943). See 86 C.J.S., Theatres and Shows § 41b (1954):
"The owner or proprietor of a theatre or other place of public amusement is required to exercise ordinary or reasonable care to keep his premises or appliances in a reasonably safe condition."
* * * * *
"... Where an amusement or device is of an unusual or inherently dangerous nature, the standard of ordinary or reasonable care requires the exercise of a high degree of care, and it has been held that the proprietor of a device such as a merry-go-round or roller coaster may be held to a high degree of care because of the danger of serious injury to the patron if it be defective, and that, other things being equal, the proprietor of a swimming pool owes a higher degree of care to one whom he knows cannot swim and who is permitted to enter the pool, than to one whom he knows can swim." (Emphasis added.)