Tammy Herring LAMB, Plaintiff and Appellant,

v.

B & B AMUSEMENTS CORP., an Arizona corporation, and Curtis Industries, Inc., a Delaware corporation, Defendants and Appellees.

No. 910018.

Supreme Court of Utah.

Nov. 19, 1993.

Rehearing Denied March 16, 1994.

Peter C. Collins, Salt Lake City, for Tammy Herring Lamb.

Scott Christensen, Salt Lake City, for B & B Amusements.

Robert H. Henderson, Salt Lake City, for Curtis Industries.

STEWART, Justice:

Plaintiff Tammy Herring Lamb was injured when the third and fourth cars of a five-car children's roller coaster in which she was riding separated. Apparently, the bolt connecting the cars failed. Lamb filed a complaint against B & B Amusements Corp., the operator of the amusement ride, for negligence in the maintenance and/or inspection of the roller coaster and Curtis Industries, Inc., the manufacturer of the bolt, for negligence and strict products liability. Lamb appeals a summary judgment in favor of Curtis and a jury verdict in favor of B & B. We reverse the summary judgment holding Curtis not liable as a matter of law and affirm the jury verdict.

## I.

B & B moved for summary judgment on the negligence claim against it. In support of its motion, B & B submitted affidavits and deposition testimony establishing the maintenance and inspection procedures B & B used with respect to the roller coaster. B & B also submitted the affidavit of Dr. Thomas Blotter, who stated that if B & B's regular maintenance procedures were followed, the failure of the bolt was not the result of B & B's operation or maintenance of the roller coaster. In opposition to B & B's motion for summary judgment, Lamb submitted the affidavit of David C. Stephens. That affidavit stated that the bolt probably failed because of over-tightening or inadequate lubrication by B & B.

Curtis also moved for summary judgment on the products liability claim against it, but submitted no affidavit or other evidentiary material in support of its motion. Curtis argued that it was entitled to summary judgment on the grounds that plaintiff had submitted no evidence of Curtis's liability and that plaintiff's own expert suggested that B & B's conduct was responsible for the accident. Plaintiff opposed the motion on the grounds that the evidence in B & B's affidavits and depositions supported her claim against Curtis and that, in any event, the doctrine of res ipsa loquitur supported an inference of product defect that precluded summary judgment.

The trial court denied B & B's motion for summary judgment, but granted Curtis's motion on the grounds that res ipsa loquitur does not apply to strict liability cases and that plaintiff had failed to establish a material issue of fact on the products liability claim. After a trial on Lamb's negligence claim against B & B, the jury found in favor of B & B. Lamb appeals the summary judgment in favor of Curtis and the trial court's denial of her motion for a new trial against B & B.

Summary judgment allows the parties to pierce the pleadings to determine whether a material issue of fact exists that must be resolved by the fact finder. *Reagan Outdoor Advertising, Inc. v. Lundgren,* 692 P.2d 776, 779 (Utah 1984); *Webster v. Sill,* 675 P.2d 1170, 1172 (Utah 1983). The party moving for summary judgment must establish a right to judgment based on the applicable law as applied to an undisputed material issue of fact. Utah R.Civ.P. 56; *Transamerica Cash Reserve, Inc. v. Dixie Power & Water, Inc.,* 789 P.2d 24, 25 (Utah 1990). A party opposing the motion is required only to show that there is a material issue of fact. Affidavits and depositions submitted in support of and in opposition to a motion for summary judgment may be used only to determine whether a material issue of fact exists, not to determine whether one party's case is less persuasive than another's or is not likely to succeed in a trial on the merits.

As the moving party, Curtis had the affirmative burden of establishing that there were no material issues of fact as to its

liability. Curtis submitted no affidavit or other evidence in support of its motion. Curtis simply argued that it was entitled to summary judgment because the affidavit of Lamb's expert stated that B & B's negligent maintenance of the bolt caused the accident and because Lamb presented no evidence of Curtis's liability. Curtis asserts that the negative implication of the affidavit of plaintiff's expert as to B & B's negligence is that the bolt was not defective. The issue, therefore, is whether Curtis, as movant, is entitled to summary judgment solely on the basis that the affidavit of Lamb's expert submitted in opposition to B & B's motion for summary judgment binds Lamb with respect to Curtis's motion for summary judgment on the products liability claim against Curtis. We think not.

■ Lamb pleaded a claim upon which relief may be granted under a theory that Curtis was liable under strict products liability law. *See Ernest W. Hahn, Inc. v. Armco Steel Co.*, 601 P.2d 152, 158 (Utah 1979); *see also Mulherin v. Ingersoll–Rand Co.*, 628 P.2d 1301, 1302 (Utah 1981). On that theory, Curtis could be liable if its product was unreasonably dangerous to a user or consumer because of a defect or defective condition existing at the time the product was sold. *See* Utah Code Ann. § 78–15–6. To plead a case of strict products liability against a manufacturer, a plaintiff must allege (1) that the product was unreasonably dangerous due to a defect or defective condition, (2) that the defect existed at the time the product was sold, and (3) that the defective condition was a cause of the plaintiff's injuries. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 103, at 713 (5th ed. 1984); *see also Zyferman v. Taylor*, 444 So.2d 1088, 1091 (Fla.Dist.Ct.App.), *review denied*, 453 So.2d 44 (Fla.1984). Curtis does not argue that Lamb's complaint failed to state a claim, only that there is no material issue of fact as to the products liability claim.

Lamb's claims against B & B and Curtis were alternative theories of liability. The evidence was undisputed that a bolt broke, causing two roller coaster cars to separate, thereby injuring plaintiff. The critical factual issue was whether the bolt failed because of negligent maintenance, operation, or inspection by B & B or because of a manufacturing defect in the bolt.

Lamb's expert, David C. Stephens, stated in an affidavit in opposition to B & B's motion that in his opinion the most probable cause of the accident, based on his interpretation of the circumstantial evidence, was that the bolt failed because of over-tightening or inadequate lubrication by B & B. The affidavit did not establish that negligent maintenance, operation, or inspection caused the accident. Because it was submitted in opposition to B & B's motion, it established only that there was a material issue of fact as to B & B's liability. Stephens's affidavit did not prove, by negative inference or otherwise, that the bolt was defect free; it merely stated a factual theory of liability in a case in which the actual factual cause of the accident would be decided in a trial on the merits.

The Stephens affidavit must be viewed in light of the deposition testimony of B & B's employees who explained how the roller coaster was maintained and operated and the affidavit of B & B's expert, Dr. Thomas Blotter, who asserted that if regular maintenance procedures were followed, the failure of the bolt was not caused by negligent operation or maintenance practices by B & B. Taken together, Lamb's and B & B's evidence established only that there was a triable issue of fact as to B & B's negligence, not that the bolt was free of defect.

In submitting an affidavit in opposition to defendant B & B's motion for summary judgment, plaintiff was not bound by that submission with respect to her claim against defendant Curtis. In her complaint, she alleged the necessary facts to sustain a claim against Curtis for products liability. She was entitled to allege alternative theories of liability, even if they were inconsistent.

As movant, Curtis did not meet its burden of showing that there was no material issue of fact as to its liability. Therefore, the trial court erred in granting Curtis's motion for summary judgment. Accordingly, we reverse the summary judgment in favor of Curtis and remand for further proceedings.

## II.

Lamb contends that the jury verdict for B & B should be reversed because the trial court refused to instruct the jury that a standard of care higher than the "reasonably prudent person" standard should be imposed on amusement ride operators.

Plaintiff asked the trial court to instruct the jury that the standard of care applicable to common carriers should be applied to amusement ride operators. Plaintiff took her proposed instruction from instruction number 31.6 of *Jury Instruction Forms Utah* (1957), which provides, "As a common carrier the defendant was required by law to use the highest degree of care for the safe carriage of plaintiff, to provide everything reasonably necessary for that purpose and to exercise a reasonable degree of skill." The trial court refused to give the instruction and instead instructed the jury that B & B should be held to the standard of care expected of a reasonably prudent person under the circumstances.[1]

The "reasonably prudent person" standard of care is a flexible legal concept requiring a greater or lesser degree of care according to the nature of the circumstances that a reasonably prudent person would consider in assessing possible risks of injury. Common carriers are held to a higher standard of care than the "reasonably prudent person" standard. *See Johnson v. Lewis,* 121 Utah 218, 225, 240 P.2d 498, 502 (1952); *see also McMaster v. Salt Lake Transp. Co.,* 108 Utah 207, 210, 159 P.2d 121, 122 (1945); *Sine v. Salt Lake Transp. Co.,* 106 Utah 289, 296, 147 P.2d 875, 879 (1944). Passengers entrust common carriers with their personal safety, have little if any opportunity to protect themselves from harm caused by a common carrier, and pay the carrier for safe transportation. In addition, the public has an important stake in having the public transportation of persons be as safe as possible. In *Johnson v. Lewis,* 121 Utah 218, 225, 240 P.2d 498, 502 (1952), the Court stated:

[T]he duty owing by the carrier to its passengers for hire is definitely greater than such carrier owes to guests and the general public. Although the test in both cases is the care of an ordinary, prudent person under the existing facts and circumstances, *the relationship of carrier to its passengers for hire is a circumstance which requires more foresight and greater caution than it owes to guests or the public generally.*

(Emphasis added.)

In some respects, the operators of amusement rides and common carriers deal with similar circumstances. Both are entrusted with passengers who depend on the operators for their safety, and both charge a fee for their services. Nevertheless, the circumstances in which common carriers and amusement ride operators function differ in important respects. The heightened standard of care required of common carriers is predicated on the principle that "[p]ersons using ordinary transportation devices, such as elevators and buses, normally expect to be carried safely, securely, and without incident to their destination." *Harlan v. Six Flags Over Georgia, Inc.,* 250 Ga. 352, 297 S.E.2d 468, 469 (1982). Persons who use amusement rides have different expectations. Passengers on many amusement rides expect entertainment in the form of high speeds, steep drops, and tight turns. There are, of course, many kinds of amusement rides, and patrons who use those rides must, to some extent, be aware of their own physical abilities and limitations and exercise some judg-

---

1. The instruction the trial court gave defined the terms "negligence" and "ordinary care" as follows:

 "Negligence" means the failure to do what a reasonably prudent person would have done under the circumstances of the situation, or doing what such person under such existing circumstances would not have done. The essence of the fault may lie in acting or omitting to act. The duty is dictated and measured by the exigencies of the occasion.

 "Ordinary care" is that degree of care which a reasonably prudent person would use under the same or similar circumstances. "Ordinary care" implies the exercise of diligence and such watchfulness, caution and foresight as under the circumstances of the particular case would be exercised by a reasonably careful, prudent person.

ment as to their ability to endure the physical and mental stresses encountered on various rides. Amusement rides are not designed to provide comfortable, uneventful transportation, even when the equipment operates without incident and as intended.

 Nevertheless, operators of an amusement ride must still exercise a reasonable degree of care, skill, and diligence sufficient to assure that a ride is as safe as is reasonably possible for its passengers. They must take into account the inability of passengers to know and appreciate the risks of harm from equipment failures and malfunctions and their inability to take reasonable measures to avert injury. " 'The owner or operator of the ride or device must use reasonable care to see that it is properly constructed and designed, maintained, and managed; and reasonable care in such respect is that which an *ordinary prudent person would exercise under like circumstances and in a like situation.*' " *Sergermeister v. Recreation Corp. of Am.*, 314 So.2d 626, 632 (Fla.Dist.Ct.App.1975), *cert. denied,* 328 So.2d 844 (Fla.1976) (emphasis added) (quoting 4 Am.Jur.2d *Amusements and Exhibitions* § 88, at 213 (1962)).

 Consistent with the majority of courts that have ruled on the issue, we hold that the care required of amusement ride operators is the care that reasonably prudent persons would exercise under the circumstances.[2] Implicit in that standard is the requirement that an amusement ride operator exercise the degree of care in operating a ride commensurate with the dangers and risks created by the ride. *See Sergermeister,* 314 So.2d at 632.

In sum, the trial court did not err by refusing to give the common carrier standard of care instruction.

**2.** The majority of courts that have decided this issue have applied this general rule. *See, e.g., Sergermeister v. Recreation Corp. of Am.,* 314 So.2d 626 (Fla.Dist.Ct.App.1975), *cert. denied,* 328 So.2d 844 (Fla.1976); *Harlan v. Six Flags Over Georgia, Inc.,* 250 Ga. 352, 297 S.E.2d 468 (1982); *Rivere v. Thunderbird,* 353 So.2d 346 (La.Ct.App.1977); *Siciliano v. Capitol City Shows, Inc.,* 124 N.H. 719, 475 A.2d 19 (1984).

## III.

 Lamb also contends that the trial court erred in admitting the testimony of Dr. Thomas Blotter. Lamb argues that his testimony, which went to the issue of whether the bolt was defective, was inadmissible because B & B failed to give Lamb notice of the subject matter of his testimony as requested in an interrogatory and that this failure amounted to undue surprise. Without Dr. Blotter's testimony, Lamb asserts, there is insufficient evidence to support the jury's verdict.

 To preserve an issue for appeal, a party claiming error in the admission of evidence must object on the record in a timely fashion. *Barson v. E.R. Squibb & Sons, Inc.,* 682 P.2d 832, 837 (Utah 1984). One who fails to make a necessary objection or who fails to insure that it is on the record is deemed to have waived the issue. *Hansen v. Stewart,* 761 P.2d 14, 16 (Utah 1988).

Lamb did not object on the record to the admission of Dr. Blotter's testimony. She argues that an appropriate objection was made at a side bar conference to that part of Dr. Blotter's testimony indicating that the accident was most probably caused by a flawed or counterfeit bolt. That was not sufficient. In *Hansen,* this Court refused to consider the plaintiffs' challenge to certain jury instructions because the plaintiffs had not adequately preserved the objections on the record, even though the parties and the trial court agreed that an off-the-record discussion occurred at which some objections were made. *Id.* at 17; *see also Russell v. Russell,* 212 Utah 12, 852 P.2d 997, 1000 (1993). Plaintiff's failure to make an objection on the record bars our consideration of the issue on appeal.

For more cases and discussion of the topic, see generally 4 Am.Jur.2d *Amusements and Exhibitions* § 88 (1962); Annotation, *Liability of Owner, Lessee, or Operator for Injury or Death on or near Loop-o-plane, Ferris Wheel, Miniature Car, or Similar Rides,* 86 A.L.R.2d 350 (1962); Annotation, *Liability to Patron of Scenic Railway, Roller Coaster, or Miniature Railway,* 66 A.L.R.2d 689 (1959).

Affirmed as to B & B; reversed and remanded as to Curtis.

HALL, C.J., HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.